John LELSZ, By and Through his parents and guardians, Mr. & Mrs. LELSZ, et al., Plaintiffs-Appellees,

v.

John J. KAVANAGH, M.D., et al., Defendants-Appellants.

No. 86–1736.

United States Court of Appeals, Fifth Circuit.

Aug. 14, 1987.

Toni Hunter, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Martha H. Allan, Asst. Atty. Gen., Austin, Tex., for defendants-appellants.

David Ferleger, Barbara Hoffman, Philadelphia, Pa., For Lelsz.

Diane Shisk, Advocacy Inc., Austin, Tex., For Advocacy, Inc.

David C. Shaw, Hartford, Conn., Rona Statman, Austin, Tex., for Association of Retarded Citizens—Texas.

Before WRIGHT,* GEE and JOLLY, Circuit Judges.

GEE, Circuit Judge:

The State of Texas appeals an order issued by Judge Sanders in the Texas mental health care case.[1] That order specified which plaintiff class members the defendant must pay for directly as agreed to in the Resolution and Settlement (R & S) entered into by the parties and approved by the district court in 1983. The dispute hinges on the definition of "defendants' facilities" found in paragraph 6b of the R & S. The district court ruled that "defendants' facilities" included

> those facilities owned, operated, or substantially subsidized by Defendants, that is, the state schools and community programs operated by them, the state centers and state hospitals, the community centers and providers operated, controlled, or substantially funded by the community centers.

Mem.Op. at 4 (July 30, 1986). Because we conclude that the plain language of the R & S precludes such an expansive definition, we reverse the district court's order.

■ The appellees raise three meritless jurisdictional issues: lack of any substantial question, lack of any case or controversy, and that arguments raised by the appellants were not properly presented to the district court. In addition, a jurisdictional question arises because of an earlier opinion in this case that cited the eleventh amendment as a jurisdictional bar to the federal court's enforcing the consent decree on purely state law grounds. *Lelsz v. Kavanagh*, 807 F.2d 1243 (5th Cir.) *rehearing en banc denied*, 815 F.2d 1034 (5th Cir.1987). Although it may be unclear how much life remains in the consent decree after that opinion, some does; and it does not preclude us from enforcing other portions of the consent decree. *See Lelsz v. Kavanagh*, 815 F.2d at 1035 (5th Cir.1987) (denying rehearing en banc). The issue here lies at the heart of the consent decree and therefore necessarily involves whatever enforceable provisions resting on federal rights remain.

To interpret the consent decree here, we apply the general principles of contract interpretation, among which is the rule that "the scope of a consent decree must be discerned within its four corners." *Eaton*

---

* Circuit Court of the Ninth Circuit, sitting by designation.

1. The original suit was filed in 1974 as a class action seeking to end abuse of mentally retarded patients in Texas. *See Lelsz v. Kavanagh*, 807 F.2d 1243 (5th Cir.), *rehearing en banc denied*, 815 F.2d 1034 (5th Cir.1987).

*v. Courtaulds of North America, Inc.,* 578 F.2d 87, 91 (5th Cir.1978) (*quoting United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971)). Paragraph 6a of the R & S defines the members of the plaintiff class as all persons who have been residents of Austin, Denton, or Fort Worth State Schools ("the named schools") since November 27, 1974, or who will be resident in the future, and all persons who have been listed, or will be listed, on the statewide Registry for State School Placement since 1981.

Paragraph 6b then describes the class members to whom the R & S applies. The first sentence of 6b states that the R & S applies to 1) residents who currently or in the future reside in the named schools or any facility operated by the named schools, and 2) "those other members of the plaintiff class who come forward and request services." [2] The second and third sentences delineate the duty of the state to pay:

> It is understood by the parties that defendants will provide the services in the Resolution and Settlement to those members of the plaintiff class described in this paragraph who currently or in the future are residents of any of the defendants' facilities. While the Department is a funding source for community centers through the grant-in-aid process and for local agencies through contracts, it is understood by the parties that defendants are not obligated to pay for services to the specific plaintiff class members as described above in this paragraph who are not residents of defendants' facilities.

R & S at 4. The parties' disagreement is over what constitutes the "defendants' facilities." The appellants contend that this item refers only to the state institutions that the legislature lists as composing the

Texas Department of Mental Health and Mental Retardation (TDMHMR). *See* Tex. Rev.Civ.Stat.Ann. art. 5547–202, § 2.01 (listing the 27 current state hospitals and facilities and including "any additional facilities and institutions as may hereafter by law be made a part of the Department"). The appellees do not attempt to reconcile sentence two and three and assert instead that defendants' facilities include all facilities that receive state money.

 The district court rejected the state's contentions because

> Under Defendants' construction, Defendants would lose all responsibility for class members once the class member was placed outside of an institution. This would lead to the anomalous result of class members obtaining their rights to community placements as the least restrictive alternative, and by that very action losing all other rights. The act of moving into the community and out of a "facility" would cost them their entitlement to services under the Settlement. Such a construction would invalidate most of the Settlement for large portions of the class and would either render ¶ 16 of the Settlement meaningless or place the two paragraphs in conflict.[3]

Mem.Op. at 5. The district court's interpretation, however, does not reconcile satisfactorily the second and third sentences of paragraph 6b. We must interpret the contract by its plain language and also avoid a construction that renders portions of the text meaningless.

The reasonable interpretation of the third sentence of paragraph 6b contradicts the district court's definition of "defendants' facilities." The third sentence states, to paraphrase, that although the Department funds community centers and local agencies, it is not obligated to pay for

---

**2.** The district court concluded "that a class member who resides in one of Defendants' facilities must be deemed to have come forward and requested services." Mem.Op. at 7. The state disputes this interpretation only to the extent that it includes the expanded definition of defendants' facilities. Our reading of the R & S removes the state's argument on this point.

**3.** Paragraph 16 provides:

> Defendants will, through program standards, regulations and evaluation mechanisms to be established by the Department, ensure that facilities, programs, and services to members of the plaintiff class operated directly or through contracts or grants-in-aid provide appropriate services consistent with this Resolution and Settlement.

services to the specific plaintiff class members who are not residents of defendants' facilities. If the term "defendants' facilities" includes community centers and local agencies, as the district court ruled it does, then the first clause of this sentence is meaningless. The sentence has an obvious and natural meaning that excludes community centers and local agencies from the definition of "defendants' facilities." In other words, even though it is arguable that the state is responsible to pay for residents of community centers and local agencies *because* it provides most of the funding for those places, the state does not have to pay for those residents because it will only pay for residents at the institutions directly and statutorily controlled by the Board of Commissions of the TDMHMR. That is the only sensible interpretation of the third sentence standing alone.

The third sentence's immediate context bolsters this interpretation. The second sentence sets up the obligation of the defendants to *pay*. The third sentence then limits this obligation to the residents of the TDMHMR institutions. The fourth sentence then provides: "This provision is not intended to preclude coordinating mechanisms between state facilities and community centers to permit reallocation of resources based upon identified shifts in service delivery responsibilities." Cutting though the social scientific jargon, this last sentence appears to mean that even though the state has no duty to pay for residents of community centers and local agencies, that lack of a duty will not prevent the state from shifting money from those institutions where it does have the duty to pay to community centers and local agencies if circumstances permit it.[4]

Contrary to the district court's contention, this interpretation does not render paragraph 16 meaningless. All that need be done is to separate the defendants' duty to "pay" in paragraph 6b from their duty to "ensure" "through program standards, regulations and evaluation mechanisms," in paragraph 16. Paragraph 16 makes this a duty to "ensure that facilities, programs, and services to members of the plaintiff class operated directly or through contracts or grants-in-aid provide appropriate services consistent with [the] Resolution and Settlement." This duty differs from a duty to pay; the defendants could satisfy it by regulation alone. The funding needed to achieve the higher standards required by the new regulations could come from federal, local, private, *or* state sources. Paragraph 6b requires the state to pay for residents at the state institutions. The state, however, is not obligated to pay for those in community centers and local agencies.

Paragraph 32 further buttresses this interpretation of the split between the obligation to pay and the obligation to ensure through regulation. It provides that the defendants "will seek the Home and Community Based Services Waiver under the provision of 1915(c) of the Social Security Act in order to maximize funds available for home and community based services for persons with retardation under this R & S." If the defendants had the obligation to *pay* for residents in community centers, there would be no sense in having them promise that they would try to maximize funds from the federal government.

The above interpretation harmonizes the various provisions of the R & S in question without ignoring the natural import of the second and third sentences of paragraph 6b. Paragraph 16 may ultimately require the defendants to pay for community centers and local agencies to meet the established regulations, but it allows the Defendants to seek compliance without an initial injection of state money. We hold that "defendants' facilities" as used in Paragraph 6b of the R & S refers only to the state institutions that the Texas State Legislature lists as comprising the Texas Department of Mental Health and Mental

---

4. For example, the state may have overfunded the large state institutions and, because attendance is down at these institutions, they may have extra money available. Sentence four permits the state to shift that money down to the community center level without incurring an absolute duty henceforward to pay for the patients at the community level.

Retardation. *See* Tex.Rev.Civ.Stat.Ann. art. 5547–202, § 2.01.

We therefore REVERSE the district court's order to the contrary.