Harry B. BARTLEY, Jr., et al., Plaintiffs,

and

Ronald Brown, et al., Intervenors,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Defendant.

Civ. A. No. 3–91–CV–1857–H.

United States District Court, N.D. Texas, Dallas Division.

Dec. 11, 1992.

---

Mike McKool, Jr., Michael Andrew Piazza, Jeffrey A. Carter, McKool Smith, Dallas, TX, for Harry B. Bartley, Jr., W.H. Bowen, Jr., John P. Hayes, Thomas B. Howard, Jr., Walter J. Humann, Irvin L. Levy, Richard C. Marcus, W.C. McCord, Paul R. Seegers, M.T. Solomon, B.O. St. John, John F. Stephens, W. Ray Wallace, Donald Zale, John W. Carpenter, John C. Nabors, Craig Louis Weinstock, Liddell Sapp Zivley Hill & La-Boon, Thomas Ray Jackson, Jones Day Reavis & Pogue, Dallas, TX, for Lucy C. Billingsley.

Robert Blaine Payne, Payne & Vendig, Dallas, TX, for H.R. Bright.

Merlyn Dale Sampels, Worsham Forsythe Sampels & Wooldridge, Mike McKool, Jr., Michael Andrew Piazza, Jeffrey A. Carter, Dallas, TX, for Jack W. Evans.

Robert H. Mow, Jr., Eric Ross Cromartie, Darrell E. Jordan, Hughes & Luce, Dallas, TX, for Gerald W. Fronterhouse, Joseph P. Musolino, Joe B. Fortson, III, Thomas M. Covert, Thomas E. Foster.

Louis J. Weber, Jr., Melton Weber Whaley Letteer & Mock, Jeffrey A. Kaplan, Law Office of Jeffrey Kaplan, Mike McKool, Jr., Michael Andrew Piazza, Jeffrey A. Carter, Dallas, TX, for J.L. Jackson.

Chester John Hinshaw, Thomas Ray Jackson, Patricia Jane Villareal, Michael Lyn Rice, Jones Day Reavis & Pogue, Dallas, TX, for Jerry R. Junkins, J. McDonald Williams.

Coyt Randal Johnston, Robert Loyd Tobey, Johnston & Budner, Dallas, TX, Mike McKool, Jr., Michael Andrew Piazza, Jeffrey A. Carter, Dallas, TX, for Joseph V. Mariner, Jr.

Charles Porter Storey, Storey Armstrong Steger & Martin, Dallas, TX, for C.H. Pistor.

Joseph Jerome Lastelick, Lastelick Anderson & Arneson, Dallas, TX, for John T. Stuart.

Eric Ross Cromartie, Mike McKool, Jr., Michael Andrew Piazza, Jeffrey A. Carter, Dallas, TX, for William H. Nuckols.

Lewis Titus LeClair, Johnson & Gibbs, Dallas, TX, for Kent M. Black, David Dono-

sky, Ray L. Hunt, James A. Middleton, Robert H. Dedman.

Lewis Titus LeClair, Robert Elkin, Robert Bell Crotty, McKool Smith, Dallas, TX, for Peter O'Donnell, Jr.

Christopher Wood Byrd, Walter B. Stuart, IV, David T. Hedges, Jr., Karl S. Stern, Ernest J. Blansfield, Jr., Vinson & Elkins, Houston, TX, Mike McKool, Jr., Michael Andrew Piazza, Jeffrey A. Carter, Dallas, TX, for George W. Strake.

Daniel B. Jones, Robert E. Wood, Williford & Wood, Dallas, TX, for Gerald McKim.

Christopher Wood Byrd, Walter B. Stuart, IV, David T. Hedges, Jr., Karl S. Stern, Ernest J. Blansfield, Jr., Houston, TX, for Ronald Brown, Thomas G. Barksdale, John M. Hamstra, George R. Farris, John F. Woodhouse, Jon E. Montoya, Ken H. Braun, William A. Anderson, Jr., Thurman Andress, Maurice J. Aresty, Robert W. Baldwin, Gus Block, Raymond D. Broehstein, Wayne D. Duddlesten, John H. Falb, John P. Hansen, Murry D. Kennedy, Thomas K. Matthews, II, Allan T. McInnes, Joseph F. Meyer, III, Gary M. Pearce, Gordon Van Liew.

Craig Louis Weinstock, R. Bruce LaBoon, Cloyd Laporte, III, Liddell Sapp Zivley Hill & LaBoon, Dallas, TX, Christopher Wood Byrd, Walter B. Stuart, IV, David T. Hedges, Jr., Karl S. Stern, Ernest J. Blansfield, Jr., Jack Burleigh, Vinson & Elkins, Houston, TX, for Isabel Brown Wilson.

James Alexander McCorquodale, Paul D. Schoonover, Richard David Pullman, Scott Edmund Hayes, Vial Hamilton Koch & Knox, Dallas, TX, for National Union Fire Ins. Co. of Pittsburgh, PA.

Frederick Bartlett Wulff, Lee M. Simpson, Cohan Simpson Cowlishaw Aranza & Wulff, Dallas, TX, for Alexander & Alexander of Texas, Inc.

Christopher Wood Byrd, Walter B. Stuart, IV, David T. Hedges, Jr., Jack Burleigh, Vinson & Elkins, Houston, TX, for John C. Pope, Donald E. Warfield, Robert W. Page.

Richard E. Young, Sheehan Young & Culp PC, Dallas, TX, for James R. Erwin.

Clarence Guittard, pro se.

Harlan Martin, pro se.

## *MEMORANDUM OPINION AND ORDER*

SANDERS, Chief Judge.

Before the Court are National Union Fire Insurance Company of Pittsburgh, PA's ("National Union") Motion to Dismiss for Failure to State a Claim, filed September 17, 1991; National Union's Motion to Dismiss Plaintiffs' Second Amended Complaint, filed April 3, 1992; National Union's Motion to Dismiss Complaints in Intervention of Erwin, Farris, Page, Pope and Warfield, filed September 4, 1992; the Response of Plaintiff George Strake, Jr. and Intervenors, filed November 26, 1991; the Memorandum of Plaintiffs in Opposition to National Union's Motion to Dismiss, filed September 21, 1992; the Response of Intervenors Farris, Page, Pope, and Warfield, filed September 23, 1992; the Response of Intervenor James R. Erwin, filed September 24, 1992; National Union's Reply, filed December 16, 1991; and the Reply Brief of National Union, filed October 6, 1992.

## I. Background

This is a suit between former officers and directors of First RepublicBank and the insurance company that contracted to provide them with liability insurance. Plaintiffs are former directors and officers of First RepublicBank–Dallas. They have been sued by the Federal Deposit Insurance Corporation ("FDIC") for negligence and breaches of their common law and statutory duties as officers and directors.[1] Plaintiffs brought this action seeking a declaratory judgment regarding the coverage obligations of National Union under an officers and directors liability insurance policy and a binder that superseded the policy. Plaintiffs also seek monetary damages, including all past and future costs of defense incurred in their defense against the FDIC's claims. Intervenors are former directors and officers of First RepublicBank–Houston who present similar claims for the cost of defending a

---

1. The suit between the FDIC and the RepublicBank–Dallas officers and directors is pending before this Court. *See* Federal Deposit Ins. Corp. v. Bright, et al., No. 3:91–CV–1490–H (N.D.Tex.).

similar suit brought by the FDIC in Houston.[2] Plaintiffs and Intervenors alike claim that National Union provided, but failed to honor, an insurance policy which covered the FDIC's claims against them.

On April 24, 1992, the Court referred this case to mediation. Four days later, the Court stayed all proceedings involving National Union. The Court then dismissed all claims against another defendant in this action, Alexander & Alexander. *See* Bartley, et al. v. National Union, No. 3:91–CV–1857–H (N.D.Tex. filed June 1, 1992).[3] While this case was stayed, the Court allowed Intervenors Farris, Page, Pope, and Warfield to file their Complaint in Intervention against National Union. On August 31, 1992, the Court lifted the stay, granted Intervenor Erwin's Motion for Leave to Intervene, and ordered the Plaintiffs and Intervenors to respond to National Union's Rule 12(b)(6) motion. Since all responses and replies have been filed, National Union's motion to dismiss is now ripe for consideration.

## II. The Claims

Plaintiffs' Second Amended Complaint, filed January 24, 1992,[4] alleges that Plaintiffs are insureds under National Union Policy No. 943–64–66 ("Policy" or "Year 1 Policy") and a Binder for Policy No. 943–67–64 ("Binder") that provided insurance coverage to the directors and officers of the First RepublicBank Corporation "Until the [88–89] policy [is] Received." *See* Exhibit A to Plaintiffs' Second Amended Complaint. The Policy became effective on June 6, 1987 and expired on June 6, 1988. The Binder became effective on June 6, 1988.

Plaintiffs state that on June 23, 1989, while the Binder was still in effect, they received notice that the FDIC would bring claims against them. Plaintiffs allege that they then forwarded this notice to National Union during the coverage period of the National Union policies and that they otherwise complied with the conditions required of them for coverage. Plaintiffs state that National Union then denied that claims brought by regulators, such as the FDIC, were covered by the policies and informed Plaintiffs that coverage would not be provided. *See* Exhibit C to Plaintiffs' Second Amended Complaint.

Plaintiffs thus allege that National Union breached its duties to Plaintiffs. Specifically, Plaintiffs have brought: (1) a breach of contract claim against National Union for its failure to provide coverage for the claims brought by the FDIC and its failure to pay the costs of defending the FDIC suit; (2) a declaratory judgment action, seeking a declaration that, under the National Union policies, Plaintiffs have a right to coverage for the FDIC's claims and the costs of defending against those claims; (3) a claim asserting that National Union breached its duty of good faith and fair dealing and was grossly negligent; and (4) a claim alleging that National Union violated Article 21.21 of the Texas Insurance Code. Plaintiffs also seek attorney's fees for costs incurred in this action.

The Intervenors' complaints are, for the most part, identical.[5] The Intervenors have alleged claims that seek the relief that Plaintiffs demand in their declaratory judgment and breach of contract claims. None of the Intervenors, however, have asserted claims which parrot Plaintiffs' breach of good faith

---

2. The suit between the FDIC and the Republic-Bank–Houston officers and directors is pending in the United States District Court for the Southern District of Texas, Houston Division. *See Federal Deposit Ins. Corp. v. Brown, et al.,* 812 F.Supp. 722 (S.D.Tex.1992).

3. This Order, dismissing a resident of Texas (and the only non-diverse Defendant), removed any question regarding this Court's subject matter jurisdiction and disposed of the pending motions to remand.

4. The Court granted Plaintiffs' Motion for Leave to File Amended Complaint and Plaintiffs' Mo-

tion for Leave to Supplement Second Amended Complaint to Add Exhibits on March 26, 1992.

5. Four sets of Intervenors have entered this suit. On August 16, 1991, before this suit was removed to this Court, the Brown Intervenors filed their Petition in Intervention. Isabel Brown Wilson filed an identical Petition in Intervention on August 21, 1991. Intervenors Farris, Page, Pope, and Warfield filed their Complaint in Intervention on July 28, 1992, and Intervenor Erwin filed his Complaint in Intervention on August 31, 1992.

and fair dealing, gross negligence, and Article 21.21 claims.

In response, National Union contends that the Plaintiffs'[6] complaints fail to state a claim upon which relief can be granted because National Union's policies, the Year 1 Policy and the Binder, both contain an Endorsement that specifically excludes coverage for suits brought by regulatory agencies such as the FDIC. Specifically, National Union points to Endorsement 3 to the Year 1 Policy, a provision that National Union argues is equally applicable to the period covered by the Binder, which states that:

> In consideration of the premium charged, it is hereby understood and agreed that the insurer shall NOT be liable to make any payment for loss in connection with any claim based upon or attributable to any action or proceeding brought by or on behalf of the [FDIC], including any type of legal action which [the FDIC has] the legal right to bring as receiver, conservator, liquidator or otherwise; whether such action or proceeding is brought in the name of [the FDIC] or by or on behalf of [the FDIC] in the name of any other entity or solely in the name of any Third Party.

*See* Exhibit A to Plaintiffs' Second Amended Original Petition. National Union reasons that because their policies explicitly exclude coverage for claims brought by the FDIC, Plaintiffs' contract and declaratory judgment claims fail to state a claim upon which relief can be granted. Moreover, National Union asserts, since no coverage exists, Plaintiffs' claims that National Union breached its duty of good faith and fair dealing, violated Article 21.21 of the Texas Insurance Code, and was grossly negligent also fail to state a claim upon which relief can be granted.

### III. Analysis

■ Scores of courts have noted that " '[a] motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to be evaluated only on the pleadings.' " *Jackson v. Beaumont Police Dep't,* 958 F.2d 616, 618 (5th Cir.1992) (quoting

*Mahone v. Addicks Util. Dist.,* 836 F.2d 921, 936 (5th Cir.1988)). Courts have also clearly stated that while "the well pleaded allegations of fact are taken as true," *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974), conclusory allegations and unwarranted deductions of fact are not admitted as true. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992). The Supreme Court has addressed the standards applied to a Rule 12(b)(6) motion, stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Nevertheless, although "motions to dismiss for failure to state a claim are disfavored by the law," *Mahone,* 836 F.2d at 926, "there are times when a court *should* exercise its power to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.* at 927 (emphasis in original).

As noted above, National Union argues that Plaintiffs' complaints fail to state a claim upon which relief can be granted because the Policy and the Binder plainly do not cover losses in connection with claims brought by the FDIC. A preliminary, procedural issue to address is whether National Union's motion should be treated as a motion to dismiss or whether the Court should convert the motion into one for summary judgment. *See* Fed.R.Civ.P. 12(b); *Young v. Biggers,* 917 F.2d 873, 876–77 (5th Cir.1990); *Jones v. Automobile Ins. Co.,* 917 F.2d 1528 (11th Cir.1990).

The Fifth Circuit has held that dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper when the complaints, including the contracts upon which they rely, reveal on their face that the claimants are not entitled to the relief they seek. *See Case v. State Farm Mutual Automobile Ins. Co.,* 294 F.2d 676 (5th Cir.1961). Moreover, other courts have noted that where "the plaintiff's cause of action arises out of a contract which

---

**6.** Throughout the remainder of this opinion, Plaintiffs and Intervenors will be referred to col-

lectively as "Plaintiffs".

has been attached to the complaint as an exhibit, and where such contract shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate." *Goodman v. Board of Trustees*, 498 F.Supp. 1329, 1337 (N.D.Ill. 1980) (citing *Jacksonville Newspaper Printing Pressman and Assistants' Union v. Florida Publishing Co.*, 340 F.Supp. 993 (M.D.Fla.1972), *aff'd*, 468 F.2d 824 (5th Cir.), *cert. denied*, 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973)).

■■■ The question posed by a motion to dismiss is whether it is clear "beyond doubt that plaintiff[s] can prove no set of facts in support of" their claims which would entitle them to prevail against National Union. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). The Court must determine not merely whether Plaintiffs' cause of action exists as one capable of supporting a suit, but rather whether Plaintiffs have a valid claim against National Union under any possible theory. The Court concludes that it is appropriate to examine the face of the contract which forms the basis of a suit in a motion to dismiss for failure to state a claim upon which relief can be granted. If the insurance contract sued upon unambiguously reveals that the claimant is not entitled to coverage, then dismissal is proper. *See Producers Oil Co. v. Gore*, 437 F.Supp. 737, 739 (E.D.Okla.1977), *vacated on other grounds*, 634 F.2d 487 (10th Cir.1980); *see also Homart Development Co. v. Sigman*, 868 F.2d 1556 (11th Cir.1989) (granting judgment on the pleadings).

### A. Does the Binder include the regulatory exclusion?

■■■ The first substantive issue to address is whether the Binder is subject to the regulatory exclusion contained in Endorsement 3 to the Year 1 Policy. Plaintiffs contend that the Binder does not incorporate the terms of the Endorsement upon which National Union relies for this motion to dismiss; National Union responds that the phrase "policy as expiring" contained in the Binder clearly re-

fers to the entire Year 1 Policy, not just the forms which make up the policy without its endorsements.

■■ Because this aspect of the parties' dispute concerns the interpretation of the terms of the Binder, the Court briefly reviews the applicable Texas law concerning the interpretation of contracts.[7] "In construing a written contract, the primary concern of the court is to ascertain the intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Texas courts follow the general rule that "[o]rdinarily, all parts of contract are to be taken together, and such meaning shall be given to them as will carry out and effectuate the intention of the parties." *Great American Indem. Co. v. Pepper*, 161 Tex. 263, 339 S.W.2d 660, 661 (1960). The Court must "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Coker*, 650 S.W.2d at 393; *see also Lelsz v. Kavanagh*, 824 F.2d 372, 374 (5th Cir.1987) (applying Texas law). Terms are to be given their common, plain, popular, and ordinary meaning, unless it definitely appears that the intention of the parties would thereby be defeated. *See Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527 (Tex.1987).

■■■ Texas courts have also articulated rules of contract interpretation for construing possible ambiguities in written instruments. First, a contract is ambiguous when it is reasonably susceptible to more than one meaning, in the light of surrounding circumstances and after applying established rules of construction. *See Watkins v. Petro-Search, Inc.*, 689 F.2d 537 (5th Cir.1982); *Kelly Assoc., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593 (Tex.1984). Whether a contract contains an ambiguity is a question of law for a court to decide. *See Watkins*, 689 F.2d at 538. If a question regarding an ambiguity is presented:

the court is to take the wording of the contract in light of the surrounding circumstances, in order to ascertain the meaning that would be attached to the

7. All parties agree that Texas law applies to this suit.

wording "by a reasonably intelligent person acquainted with all the operative usages and knowing all the circumstances prior to and contemporaneous with the making of the [integrated contract], other than the oral statements by the parties of what they intended to mean."

*Id.* (quoting *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981)). Once the court considers the surrounding circumstances, if the language of the contract "appears to be capable of only a single meaning, the court can then confine itself to the writing." *Id.*

When, applying these principles, a contract is unambiguous on its face, "the instrument alone will be deemed to express the intention of the parties, for it is the objective, not subjective, intent that controls." *Id.; see also Seal v. Knorpp,* 957 F.2d 1230, 1235 (5th Cir.1992) (citing *Walker v. Horine,* 695 S.W.2d 572, 577 (Tex.App.—Corpus Christi 1985, no writ)).

To interpret the meaning of the Binder, it is first necessary to summarize the Binder's language. On the first page, "Coverage" is described to be "Directors & Officers Liability Policy/National Union Forms 8749 & 8750 (6/85)." Second, boilerplate language on the Binder states that the Binder is "subject to the provisions of the standard policies" and that it "shall be cancelled by: (1) issuance of the formal policy or endorsements...." Third, under "Remarks", the Binder states "See Attached pages 2–3." Thus, the Binder incorporates two extra pages, styled "Terms & Conditions." The "Terms & Conditions" detail special provisions beyond those embodied on the first page. These pages describe "Coverage" to be the "Policy as expiring subject to endorsements stated on this binder." *See* Plaintiffs' Second Amended Complaint Ex. A. The Binder is attached to this Order as Appendix A.

Plaintiffs contend that the "Terms & Conditions" coverage statement cannot be read to incorporate the Endorsements included in the Year 1 Policy. Instead, Plaintiffs argue that only the terms found in National Union forms 8749 and 8750 make up the Binders' terms. Plaintiffs observe that these forms

were the standard forms used to make up the body of the first ('87–'88) policy and note that these forms by themselves do not include any of the Endorsements to the Year 1 Policy. The first argument Plaintiffs make in support of this contention is that some of the Terms & Conditions of the Binder repeat in substance provisions of the Year 1 Policy that appear in Endorsements 19, 20, and 21. This fact, Plaintiffs argue, demonstrates that the Endorsements from the Year 1 Policy were not automatically incorporated into the Binder by reference.

However, an examination of the Binder's Endorsements and Endorsements 19, 20, and 21 of the Year 1 Policy reveals that the Binder does not "repeat in substance" the provisions of the Year 1 Policy Endorsements. National Union states that the Endorsements on the Binder are complementary to the Endorsements contained in the Policy and support the conclusion that the Binder did incorporate the Endorsements of the Year 1 Policy. For example, National Union notes that coverage of the former officers and directors of InterFirst is extended in Endorsement 21 of the Year 1 Policy, not in form 8749 or 8750, which offer coverage only to the company named in the Declarations—First RepublicBank Corporation. Without the extension of coverage provided to former officers and directors of InterFirst in Endorsement 21, there is no logical reason for the Binder to exclude coverage for certain wrongful acts of the former officers and directors of InterFirst, as one endorsement in the Binder does. This fact points to the conclusion that the only reasonable construction of the phrase "policy as expiring" is that it refers to the entire Year 1 Policy, not merely to forms 8749 and 8750, to the exclusion of the Endorsements.[8]

Plaintiffs' second argument in support of their contention that the Binder is not subject to the regulatory exclusion is that to read the Binder's "Policy as expiring" language to include the Year 1 Policy Endorsement by reference requires that the word "policy" be assigned a different meaning on

8. Other differences between the Year 1 Policy Endorsements and the Binder's Endorsements are outlined in Exhibit A of National Union's December 16, 1991 Reply Brief.

the second page of the Binder than it is given on the first page, hence violating the cardinal rule that terms in a contract be given the same meaning throughout the instrument. *See Gonzalez v. Mission American Ins. Co.,* 795 S.W.2d 734 (Tex.1990).

Plaintiffs state that the term "policy" found on the first page of the Binder should be read to refer to the old, '87–'88 Policy, but not to its Endorsements. In support of this position, Plaintiffs note that "Coverage" on the first page of the Binder is defined to be "Directors & Officers Liability Policy/National Union Forms 8749 & 8750 (6/85)." Moreover, Plaintiffs note that the Binder then indicates that it "is subject to the provisions of the standard policies." Plaintiffs also note that the Binder states that it "shall be cancelled by (1) issuance of the formal policy or endorsements...." In other words, Plaintiffs contend that the Binder initially uses the word "policy" to refer to the "standard policy", but not to the Endorsements to the Year 1 policy. Hence, Plaintiffs conclude that the Binder recognizes a difference between the standard policy and the appended endorsements. Thus, Plaintiffs reason that the regulatory exclusion does not apply to the Binder.

National Union's response to this argument emphasizes the tenet of contract interpretation which admonishes against reading the words of a contract in isolation. *See Coker,* 650 S.W.2d at 393. When read as a whole, National Union argues, the only reasonable construction of the word "policy" as it appears in the Binder is that it refers to the entire insurance contract for the Year 1 Policy, not just Forms 8749 and 8750.

National Union states that the illogic of Plaintiff's construction of the phrase "policy as expiring" is revealed by an examination of the insurance contract that would result from Plaintiffs' construction of the Binder. According to Plaintiffs, the insurance contract in effect when Plaintiffs notified National Union of the FDIC's claims against them consisted only of the Binder and Forms 8749 and 8750. Under this construction, however, coverage would only be provided to the directors and officers of First RepublicBank Corporation, not to the directors and officers of any of its subsidiaries. Coverage for the officers and directors of the subsidiaries is only extended by examining the definition of the named insured on the Declarations page of the Year 1 Policy, a document which Plaintiffs contend is not a part of the Binder. National Union observes that Plaintiffs have been sued by the FDIC for their acts as directors and officers of First RepublicBank–Dallas and First RepublicBank–Houston, both of which are subsidiaries of the First RepublicBank Corporation. As directors and officers of subsidiaries of the First RepublicBank Corporation, Plaintiffs would not be insured for the FDIC's claims under their own construction of the Binder.

Thus, National Union argues, the only reasonable construction of the Binder is that it incorporates the entirety of the Year 1 Policy, including the regulatory exclusion. Any other construction of the Binder discards the generally accepted meaning of the word "policy", fails to read the document as a whole, and provides no benefit to Plaintiffs who, as directors and officers of subsidiaries of First RepublicBank Corporation, would not be insured under their own construction of the Binder.

The Court concurs with National Union's reasoning. Plaintiffs have not shown that the term "policy" standing alone, as it does in the phrase "policy as expiring," should not be given its common meaning: the entire contract, including the declarations page, standard forms, and any endorsements or amendments. Thus, reading the Binder as a whole, there is only one reasonable construction of that instrument. The Endorsements to the Year 1 Policy are clearly and unambiguously incorporated by reference into the Binder by the statement on the second page of the Binder which indicates that coverage is to be the "Policy as expiring."

### B. Is the Regulatory Exclusion Ambiguous?

■ Plaintiffs' second contention is that the regulatory exclusion itself is ambiguous. Plaintiffs assert that the phrase "based upon or attributable to any action or proceeding brought by or on behalf of the [FDIC]" could reasonably be construed to apply only to "secondary suits"—i.e., claims asserted by

the FDIC against third parties and not to claims asserted by the FDIC directly against the officers and directors of an institution.

As discussed above, the interpretation of an insurance contract is a question of law for the Court to decide. *See Kelly Assoc., Ltd. v. Aetna Cas. & Sur. Co.,* 681 S.W.2d 593, 596 (Tex.1984). An ambiguity exists if two or more reasonable interpretations are possible. Thus, the question of whether an ambiguity exists is one for the Court to address. *See id.* While ambiguities in an insurance contract are generally construed against the insurer, the Fifth Circuit has stated that courts have " 'no right to read an ambiguity into the plain language of an insurance contract in order to construe it against the insurer.' " *Fidelity & Deposit Co. v. Conner,* 973 F.2d 1236, 1245 (5th Cir. 1992) (citation omitted). Similarly, the Fifth Circuit has stated that "courts ought not to strain to find ambiguities, if, in doing so, they defeat probable intentions of the parties." *Sharp v. FSLIC,* 858 F.2d 1042, 1045 (5th Cir.1988).

In support of their reading of the regulatory exclusion, Plaintiffs cite *American Casualty Co. v. FSLIC,* 704 F.Supp. 898, 902 (E.D.Ark.1989). However, that case is not directly applicable to the case at hand. The *American Casualty* case dealt with a regulatory exclusion to a directors' and officers' liability contract. But its analysis of this clause turned on the meaning of "based upon or attributable to ... any action or proceeding resulting from violation of any laws [or] regulations." *Id.* at 902. The court rejected the insurer's argument that the exclusion removed coverage for officers' and directors' conduct which violated any law or regulation and thereby gave rise to a claim. The court stated that the more reasonable construction of the phrase excluded coverage for actions or proceedings which directly resulted from violations of laws or regulations, not to actions or proceedings based on conduct which violated a law or regulation. *Id.* at 903.

Plaintiffs also rely on *FSLIC v. Heidrick,* 774 F.Supp. 352 (D.Md.1991), a case which initially held language similar to the regulatory exclusion at issue in this case to be ambiguous. In *Heidrick,* the court based its decision on a Maryland intermediate appellate court decision holding the same exclusion to be ambiguous. *See Finci v. American Cas. Co.,* 82 Md.App. 471, 572 A.2d 1092 (1990). However, the Maryland Court of Appeals reversed the lower appeals court, holding that there was no ambiguity in the regulatory exclusion. *See Finci v. American Cas. Co.,* 323 Md. 358, 593 A.2d 1069 (1991). Accordingly, the *Heidrick* court reversed its ambiguity holding, concluding that in light of the new Maryland high court ruling, there was no ambiguity. *See FSLIC v. Heidrick,* 812 F.Supp. 586 (D.Md.1991). *Heidrick* thus offers no support for Plaintiffs.

The only other case cited by Plaintiffs in support of their contention that the regulatory exclusion is ambiguous is *FSLIC v. Mmahat* No. 86-5160, 1988 WL 19304, 1988 U.S.Dist. LEXIS 1825 (E.D.La. March 3, 1988). In that case, the court interpreted language identical to that found in National Union's regulatory exclusion and found it to be ambiguous. National Union attacks this precedent on the grounds that it is based upon a similar holding in *American Casualty Co. v. FDIC,* 677 F.Supp. 600 (N.D.Iowa 1987), a holding which was reversed upon reconsideration. *See American Casualty Co. v. FDIC,* No. C-86-4018, 1990 WL 66505 at *11 (N.D. Iowa Feb. 26, 1990). The ruling which held the regulatory exclusion to be unambiguous was affirmed by the Eighth Circuit. *See American Casualty Co. v. FDIC,* 944 F.2d 455, 460-61 (8th Cir.1991).

Other courts have held that similarly worded regulatory exclusions are not ambiguous. For example, in *St. Paul Fire & Marine Ins. Co. v. FDIC,* 765 F.Supp. 538 (D.Minn.1991), the court held that an identical regulatory exclusion which excluded coverage "based upon or attributable to any claim, action or proceeding brought by or on behalf of the [FDIC]" was unambiguous. The court wrote that the insurer's "intent to preclude [coverage for] all suits brought by the FDIC could not be stated in more explicit language." *Id.* at 549. This decision was affirmed on appeal. *See St. Paul Fire and Marine Ins. Co. v. FDIC,* 968 F.2d 695 (8th Cir.1992). Similarly, the court in *Gary v. American Cas. Co.,* 753 F.Supp. 1547, 1550-51

(W.D.Okla.1990), found identical language to be unambiguous, and described the "secondary suit" argument that Plaintiffs forward here "strained and unreasonable." *Id.* at 1550. The Tenth Circuit reached the same conclusion in *FDIC v. American Cas. Co.,* 975 F.2d 677 (10th Cir.1992).

Following the clear majority of cases which have construed similar language, the Court finds that there is only one reasonable interpretation of the regulatory exclusion. Examined in the context of the entire policy, the language of the regulatory exclusion clearly relieves National Union of its obligation to cover Plaintiffs in suits brought by the FDIC. As succinctly stated by the Tenth Circuit, the awkward phrase "based upon or attributable language" forms a simple "link between the specific type of claims excluded and the more general excluding language." *American Cas. Co.,* 975 F.2d at 680. Thus, the Court concludes that the regulatory exclusion does exclude National Union's liability for the type of claims for which Plaintiffs now demand coverage.

### C. Is the Regulatory Exclusion Against Public Policy?

■ Plaintiffs also claim that the regulatory exclusion is contrary to public policy. However, the Fifth Circuit recently explicitly rejected this argument. *See Fidelity & Deposit Co. v. Conner,* 973 F.2d 1236 (5th Cir. 1992). Moreover, every other federal circuit court of appeals to consider the public policy argument has also rejected it. *See FDIC v. American Cas. Co.,* 975 F.2d 677 (10th Cir. 1992); *St. Paul Fire and Marine Co. v. FDIC,* 968 F.2d 695, 702 (8th Cir.1992). Therefore, the court finds it unnecessary to canvass Plaintiffs' arguments in detail. The Court notes that Plaintiffs' argument that the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. §§ 1811–1833e, ("FIRREA") provides a dominant public policy which would justify voiding the regulatory exclusion on public policy grounds was rejected by the Fifth Circuit. The *Conner* court recognized that FIRREA's legislative history revealed that Congress intended to remain neutral regarding regulatory exclusions. *See Conner,* 973 F.2d at 1242.

The court held that insureds "cannot rely on FIRREA as creating public policy against enforcement of the regulatory exclusion." *Id.* at 1243.

### D. Is the National Union Contract Unconscionable?

■ Plaintiffs have argued in their brief that National Union's policies are unconscionable. Plaintiffs allege that the facts of this case will show that application of the regulatory endorsement would effect an unconscionable result, especially in light of the special relationship of trust Texas law has imposed in the insurance context. *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987). Preliminarily, the Court notes that other courts have held that "the issue of unconscionability must be pleaded to be considered by the court." *Guaranteed Foods of Nebraska, Inc. v. Rison,* 207 Neb. 400, 299 N.W.2d 507 (1980); *see also Lindemann v. Eli Lilly and Co.,* 816 F.2d 199, 203 (5th Cir.1987). However, no complaint filed in this case has alleged that the National Union contract is unconscionable. Nevertheless, since some Plaintiffs requested leave to amend their complaints to allege unconscionability, the Court will consider Plaintiffs' unconscionability argument as though it had been raised in the pleadings.

Generally, courts have indicated that unconscionability is determined by an examination of the "entire atmosphere in which the contract was made, the alternatives, if any, which were available to the parties at the time of the making of the contract, the non-bargaining ability of one party, whether the contract is illegal or against public policy, and whether the contract is oppressive or unreasonable." *Wade v. Austin,* 524 S.W.2d 79, 86 (Tex.Civ.App.—Texarkana 1975, no writ). However, Plaintiffs must overcome courts' traditional reluctance to decline to enforce contracts which are merely unwise or improvident:

> In the absence of any mistake, fraud, or oppression, the courts, as such, are not interested in the wisdom or impolicy of contracts and agreements voluntarily entered into between parties compos mentis and sui juris. Such parties to contracts

have the right to insert any stipulations that may be agreed to, provided that they are neither unconscionable nor otherwise illegal or contrary to public policy. It has accordingly been said that, almost without limitation, what the parties agree upon is valid, the parties are bound by the agreement they have made, and the fact that a bargain is a hard one does not entitle a party from relief therefrom if he assumed it fairly and voluntarily. A contract is not unenforceable on the ground that it yields a return disproportionate to the expenditures in time and money, where there has been no mistake or unfairness and the party against whom it is sought to be enforced has received and enjoyed the benefits.

*Id.* at 86 (citing 17 Am.Jur.2d Contracts § 192).

More specifically, Texas courts have held that "[t]wo types of abuses must generally be present to produce a finding of unconscionability." *Id.* First, Plaintiffs must show "procedural abuse" in the formation of the contract, such as a gross disparity in bargaining ability. *See id.* "A court may find procedural unconscionability if the plaintiff presents evidence of the seller's 'overreaching or sharp practices' combined with the buyer's 'ignorance or inexperience.'" *Arkwright–Boston Mfr. Mut. Ins. Co. v. Westinghouse Elec. Corp.,* 844 F.2d 1174, 1184 (5th Cir. 1988) (citation omitted) (UCC context). Second, Plaintiffs must also demonstrate "substantive abuse", or unfairness in the formal terms of the contract. *See Wade,* 524 S.W.2d at 86. The Fifth Circuit has noted that "[a] court may find substantive unconscionability if the terms of the contract are one-sided or oppressive." *Arkwright,* 844 F.2d at 1184 (citation omitted). To meet this burden, Plaintiffs must show that the terms of their contract with National Union are plainly oppressive.

However, the Court notes that it has already determined that the regulatory exclusion provision of the National Union contract is not against public policy. This finding strongly militates in favor of the conclusion

that Plaintiffs cannot show "substantive" unconscionability. *See* Restatement (Second) of Contracts § 208 cmt. a (1981) ("[Unconscionability] overlaps with the rules which render particular bargains or terms unenforceable on grounds of public policy."). Moreover, the Court notes that the portion of the National Union officers and directors liability insurance contract which Plaintiffs argue is unconscionable is, in fact, merely an exclusion from coverage. Exclusions from coverage in insurance contracts for particular occurrences are hardly unknown in the insurance field and cannot easily be characterized as per se unreasonable. Instead, the regulatory exclusion appears to be merely an allocation of the risk agreed to by two commercial entities. Finally, the Court notes that the regulatory endorsement is a separate, typed amendment to the Year 1 Policy, not a printed term on a form contract. This fact indicates that the exclusion was "voluntarily entered into," and not the result of "mistake, fraud, or oppression." *See Wade,* 524 S.W.2d at 86.

Thus, the Court concludes that, as a matter of law, Plaintiffs cannot demonstrate substantive unfairness in the National Union contract. Under Texas law, Plaintiffs "must prove *both* substantive and procedural unconscionability to prevail on the unconscionability issue." *Arkwright,* 844 F.2d at 1184 (emphasis in original). Therefore, since Plaintiffs cannot establish one of the necessary elements of unconscionability, Plaintiffs cannot prevail on their claim that the regulatory exclusion in the National Union policy is unconscionable.[9]

### E. The Reasonable Expectations Doctrine

■ Plaintiffs have argued that the National Union Policy and the Binder are contrary to their "reasonable expectation" that they secured coverage for claims asserted by the FDIC. Plaintiffs explain that the doctrine of reasonable expectations honors the objectively reasonable expectations of insureds "even though painstaking study of the policy provisions would have negated those

9. In *American Cas. Co. v. FDIC,* 944 F.2d 455, 460 (8th Cir.1991), the Eighth Circuit also concluded that a regulatory exclusion such as the one before the Court was not unconscionable.

expectations." *Rodman v. State Farm Mut. Auto Ins.*, 208 N.W.2d 903, 906 (Iowa 1973).

However, this claim cannot support a recovery in favor of Plaintiffs even though Texas courts have recently recognized this rule of law. Until recently, only two Texas courts had discussed the issue. In *Mary Kay Cosmetics, Inc. v. North Rivers Ins. Co.*, 739 S.W.2d 608, 613–14 (Tex.App.—Dallas 1987, no writ), the court declined to address this doctrine because the plaintiff failed to properly raise the issue at the trial court level. In *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 925 (Tex.App.—Fort Worth 1988, writ denied), the court declined the insured's invitation to apply the reasonable expectations doctrine, holding that the policy in that suit was unambiguous. The court stated that the policy "leaves no room for construction in favor of the insured. Nor does it mandate the application of the 'reasonable expectations' doctrine." *Id.* at 925. However, in *Forbau v. Aetna Life Ins. Co.*, 36 Tex.Sup.Ct. J. 140, 1993 WL 141397 (Nov. 4, 1992), the Texas Supreme Court relied on an insured's reasonable expectations to assist the court to construe an ambiguous insurance contract in favor of the insured.

■ Nevertheless, the reasonable expectations doctrine is premised upon the presence of an ambiguity in the contract in question; it is not available in the face of an unambiguous contract such as the one at issue in the present case. *Forbau*, 36 Tex. Sup.Ct.J. at 143 n. 8, 144; *see also State Farm Mutual Automobile Ins. Co. v. Ball*, 127 Cal.App.3d 568, 179 Cal.Rptr. 644, 647 (1981) ("There can be no resort to the doctrine of reasonable expectations ... where no ambiguity exists in the language of an insurance contract.... It is not now and never has been true that one may, in the face of clear and explicit terms in the policy, fashion a contrary interpretation binding upon the insurer by virtue of an undisclosed assumption or understanding of what those terms meant."); *St. Paul*, 968 F.2d at 702–03 (refusing to apply the reasonable expectations doctrine to a regulatory exclusion where the exclusion was not hidden in the policy: Minnesota law restricts the doctrine to "exceptional cases where a policy provision

is both a 'hidden major exclusion' and unconscionable as a result of unequal bargaining power where the insured may have been misled."). Thus, the Court concludes that the reasonable expectations doctrine does not afford Plaintiffs a claim upon which relief can be granted.

### F. Implied Warranty of Fitness

■ Finally, Plaintiffs claim that the surrounding factual circumstances may also indicate that any regulatory exclusion clause would be unenforceable because it conflicts with an implied warranty of fitness. However, as Plaintiffs candidly admit, implied warranties of fitness have not been applied to insurance contracts. The implied warranty of fitness upon which Plaintiffs rely applies to the sale of goods. *See* Tex.Bus. & Com. Code Ann. § 2.315 (Tex UCC) (Vernon 1968). The Texas UCC defines "goods" to be "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." Tex.Bus. & Com.Code Ann. § 2.105 (Tex. UCC) (Vernon 1968). Insurance contracts do not easily fit within this definition of "goods." Absent more compelling guidance from state law, this Court declines to break new ground and recognize a novel claim against National Union. *See Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394 (5th Cir.) (en banc) ("As a federal court, 'it is not for us to adopt innovative theories of [state law], but simply to apply the law as it currently exists,' and to rule as we believe the state's highest tribunal would rule." (citations omitted)), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986)).

### G. Good Faith and Article 21.21 Claims

■ Given the fact that the National Union policies do not include coverage for claims brought against the FDIC, Plaintiffs' claims that National Union breached its duty of good faith and fair dealing, violated Article 21.21 of the Texas Insurance Code, and was grossly negligent also fail to state a claim

upon which relief can be granted. National Union could not have breached any duty of good faith and fair dealing because its denial of Plaintiff's claim was reasonable. *See Arnold,* 725 S.W.2d at 167; *Beaumont Rice Mill, Inc. v. Mid–American Indem. Ins. Co.,* 948 F.2d 950, 952 (5th Cir.1991). Similar reasoning compels the same conclusion for Plaintiffs' Article 21.21 and gross negligence claims. *See Beaumont Rice Mill,* 948 F.2d at 952.

### IV. Conclusion

The Court concludes that Plaintiffs and Intervenors have failed to state a claim upon which relief can be granted. Therefore, National Union's Motions to Dismiss Plaintiffs' and Intervenors' Complaints is **GRANTED.**

**SO ORDERED.**

## APPENDIX A

P.O. Box ..93
Dallas, Texas 75221

Rev'.'.'4
7-18-88

Page 1.

**ENERAL BINDER**

RENEWAL _____
Policy # 943-66-66
Date of Expiring binder

INSURED

First RepublicBank Corporation
P.O. Box 660020
Dallas, Texas 75266-0020

EFFECTIVE ___12:01 a.m.___ ___6/6/88___
 TIME DATE
 Until policy
EXPIRATION ___12:01 A.M.___ Received
 TIME DATE

---

THIS IS TO CERTIFY that the undersigned have procured insurance as hereinafter specified from certain Underwriters and/or Companies.

Underwriters and/or Companies:

 National Union Fire Insurance Company

Amounts or Limits $ 15,000,000 Each Policy Year

COVERAGE

 Directors & Officers Liability Policy
 National Union Forms 8749 & 8750 (6/85)

REMARKS

 See Attached pages 2 and 3.

---

THIS BINDER IS SUBJECT TO THE PROVISIONS OF THE STANDARD POLICIES THIS BINDER SHALL BE CANCELLED BY (1) ISSUANCE OF THE FORMAL POLICY OR ENDORSEMENTS (2) BINDER EXPIRATION (3) SURRENDER OF THE ORIGINAL BINDER TO THE INSUR ING COMPANY OR (4) WRITTEN NOTICE TO THE INSURED AT THE ADDRESS SHOWN ABOVE, STATING WHEN (NOT LESS THAN 5 DAYS THEREAFTER CANCELLATION SHALL BE EFFECTIVE

Date of Issue. ___June 1, 1988___

By _____
 National Union Fire Ins. Co.

## TERMS & CONDITIONS

Page 2

1. **Retentions:**
 A. Corporate Reimbursement: $10,000,000 per loss.
 B. Directors & Officers Liability: $10,000 per Director or Officer, subject to a maximum of $150,000 per loss.

2. **Premium:**
 $12,000,000 premium is fully earned at inception, provided however if National Union cancels, $3,000,000 of the premium is subject to pro-rata return.

 Return Premium Endorsement- $9,000,000 of $12,000,000 premium is subject to return based on actual loss experience. If National Union's loss as defined in the policy, excess of the retentions, is $9,000,000 or less for policies numbered 943-6466 and the 6/6/88-89 policy, bound hereunder, the full $9,000,000 will be returned once all claims have been paid and/or closed. Any loss paid excess of this $9,000,000 will reduce the premium proportionately.

 EXAMPLES:

 | National Union Losses | Return Premium |
 | --- | --- |
 | $9,000,000 or less | $9,000,000 |
 | $10,000,000 | $8,000,000 |
 | $15,475,326 | $2,524,674 |
 | $17,000,000 | $1,000,000 |
 | $18,000,000 or more | 0 |

3. **Coverage:**
 Policy as expiring subject to endorsements stated on this binder.

4. **Commission:**
 $135,000 Flat

5. **Endorsements:** (Actual wording to be mutually agreed upon)
 A. Renewal Wording Exclusion - The 6/6/88-89 policy, bound hereunder, will not respond to any previously reported notices and/or any claims arising out of such notices under any previously written First Republic or Republic Bank insurance policies including but not limited to claims arising out of, based upon, attributable to, or in connection with the follow following:

 a. The merger with InterFirst Corporation;
 b. The FDIC bailout;
 c. The bond defaults;
 d. Wrongful Acts of Directors and/or Officers of InterFirst prior to June 6, 1987 and/or;
 e. Any occurrence which could have been reported.

 B. Return Premium-See #2 above.

640

In connection with this insurance, First Republicbank agrees as follows:

1. It will promptly send to National Union all agreements entered into with any regulatory body (assistance agreements, indemnification agreements, etc.), unless prohibited by law.

2. Within sixty (60) days of receipt of the policy, First Republicbank will confirm that Alexander & Alexander has made a presentation describing the terms and conditions of the policy to all senior officers and directors, who will be given an opportunity to ask any questions about the policy.

NOTE: Binder is also subject to $11,865,000 to be wire transferred to National Union by June 3, 1988.

BY: _Thomas J. Taylor_____ BY: _____
National Union Fire Ins. Co. Alex Insurance Agency