JOHN S. AND ABAGAIL TRAIL, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Trail v. Commissioner
Docket No. 29537-91
United States Tax Court
T.C. Memo 1993-221; 1993 Tax Ct. Memo LEXIS 224; 65 T.C.M. (CCH) 2730; May 20, 1993, Filed *224 Decision will be entered for respondent. For petitioners: Rodney Lon Norville. For respondent: Portia N. Rose. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' Federal income tax for tax year 1988 in the amount of $ 292. The issue for decision is whether petitioners are entitled to claim a dependency exemption for their daughter for tax year 1988. This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Houston, Texas, when they filed their petition. Petitioners' daughter, Elizabeth Ann Trail (Elizabeth), who was 21 years old in 1988, is mentally retarded. Petitioners were part of a class of plaintiffs in a class action suit in which parents and next friends of children being treated, trained, and educated at State of Texas schools for the mentally retarded complained of *225 inadequate, unsafe, and improper care, treatment, and education. See Lelsz v. Kavanagh, 673 F. Supp. 828 (N.D. Tex. 1987) (instituting court monitoring of State of Texas schools for the mentally retarded and monitoring of class members in community placement).[1] In the Lelsz settlement, the Texas Department of Mental Health and Mental Retardation offered to pay a fixed daily amount to third-party providers of these services, if they followed Texas law and guidelines in providing the services formerly provided by State schools.
Pursuant to the terms of this settlement, petitioners signed an Agreement dated April 1, 1987 (as well as a Renewal *226 Agreement dated July 22, 1987, and an Agreement dated July 21, 1988) with the Mental Health and Mental Retardation Authority of Harris County, Texas (MHMR), in which they agreed to function as subcontractors, providing "appropriate, quality community alternative services" for Elizabeth. Petitioners received payments from MHMR in the amount of $ 16,470 during 1988. They reported this amount on Schedule C of their 1988 Federal income tax return, with offsetting deductions in the same amount, for cost of goods sold and/or operations and miscellaneous deductions. In this way, petitioners reported no taxable income for the payments they received from MHMR. The Projected Prospective Payment Plan Expenditures forming part of the stipulation of facts reflects an agreement for the payment by MHMR of $ 45 per day for 365 days for a total of $ 16,425 [2] to cover the following services: Room and Board
$  5,400
School Lunches
504
Medical
1,800
Special Foods
240
Trainer
5,160
Clothing
600
Respite Care
600
Special Toiletries
720
Special Laundry
720
Transportation
204
Home Repairs
477
TOTAL
$ 16,425
This amount exceeded the amount provided for Elizabeth's support by petitioners *227 from their own funds. Elizabeth lived at home and attended Albright Middle School, a public school in the Alief Independent School District's Division of Special Education, which provided appropriate classes for her. Respondent determined that petitioners were not entitled to claim a dependency exemption for their daughter Elizabeth for 1988 because the payments furnished by MHMR, pursuant to the Agreement, exceeded petitioners' contribution to her support. The parties agree that, if the payments under the Agreement are taken into account, petitioners did not furnish more than half of their daughter's support. Consequently, the resolution of the issue depends upon whether petitioners are entitled to exclude payments they received under the Agreement as a scholarship for study at an educational organization described in section 170(b)(1)(A)(ii). In general, to claim a dependency *228 exemption, the taxpayer must provide over half of the support of a dependent. Sec. 152(a). The term "support" includes food, shelter, clothing, medical and dental care, education, and the like. Sec. 1.152-1(a)(2)(i), Income Tax Regs.
Section 151(c)(1)(B) provides, in relevant part, that a taxpayer is entitled to claim an exemption for each dependent (as defined in section 152): (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student who has not attained the age of 24 at the close of such calendar year.
If the taxpayer's son or daughter is a student, within the meaning of section 151(c), then "amounts received as scholarships for study at an educational organization described in section 170(b)(1)(A)(ii) shall not be taken into account in determining whether the individual received more than half of his support from the taxpayer." Sec. 152(d). In general, the types of organizations listed in section 170(b) are organizations to which tax-deductible contributions may be made. Section 170(b)(1)(A)(ii) defines an educational organization as: (ii) *229 an educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on,
For the purposes of section 152, section 1.151-3(c), Income Tax Regs., defines an "educational institution" as: a school maintaining a regular faculty and established curriculum, and having an organized body of students in attendance. It includes primary and secondary schools, colleges, universities, normal schools, technical schools, mechanical schools, and similar institutions, but does not include noneducational institutions, on-the-job training, correspondence schools, night schools, and so forth.
These definitions coincide for purposes of this case in denoting a formal institution with regular faculty, curriculum, and student body. A scholarship is defined in section 1.117-3(a), Income Tax Regs., as "an amount paid or allowed to, or for the benefit of, a student, * * * to aid such individual in pursuing his studies." The term includes the value of contributed services and accommodations and the amount of tuition, matriculation, *230 and other fees which are furnished or remitted to a student to aid him in pursuing his studies. Id. Petitioners argue that, under Rev. Rul. 61-186, 1961-2 C.B. 30, and Rev. Rul. 64-221, 1964-2 C.B. 46, their home qualifies as an educational institution. In these Revenue Rulings, respondent held that amounts expended by a State institution for the room, board, and tuition of mentally retarded children will be considered a scholarship grant which will not be taken into account in determining whether the child received more than one-half of his or her support from the parents. In their trial memorandum, petitioners state that, since the trend in care of the mentally retarded is away from large institutions and toward smaller group homes, their home, under the direction and control of MHMR, qualifies as a "group home". Hence it is an educational institution. They argue that, since they provide services under the supervision of MHMR which are similar to those provided by State schools, the reimbursement they receive, as independent contractors, should be treated as a scholarship. They argue, *231 further, that the payments are not for Elizabeth's support, but for her care and treatment, and that the only difference between their situation and that of families with children attending a boarding school for the mentally retarded is the place in which the services are provided. We find this to be a contrived interpretation of the statutory provisions which clearly state that, for a payment to qualify as a scholarship, it must be "for study at an educational organization described in section 170(b)(1)(A)(ii)". Sec. 152(d). Amounts received by petitioners were not to enable Elizabeth to study, but for her support, and not paid to an "educational organization", but to petitioners' family. Petitioners appear to concede this latter point in their trial memorandum when they state: "Unfortunately Code Section 151(c) relies on the definition contained in Code Section 170(b)(1)(A)(ii), which defines an educational organization to which contributions are deductible." Though we resolve this dispute through citation of statutory definitions, we emphasize that this is not a case in which the statute is ambiguous, but one in which the statute employs the everyday, common meanings of words. *232 Petitioners' home is not a charitable organization, nor is it an educational organization, as defined in section 170(b)(1)(A)(ii). The essential difference between petitioners' situation and that of parents whose children attend a State school is that MHMR made payments directly to petitioners rather than to an educational institution. Petitioners used these payments to provide their daughter with support, as that term is defined in section 1.152-1(a)(2)(i), Income Tax Regs., and as that term is commonly understood; in other words, it was spent for such things as room and board at home, clothing, special foods and toiletries, laundry, transportation, and medical care. She attended a public school. We hold that, since petitioners did not provide more than half of the support for their daughter Elizabeth for the year in question, they are not entitled to claim a dependency exemption for her. Decision will be entered for respondent. Footnotes
1. Related cases not relevant to the case at bar are: Lelsz v. Kavanagh, 824 F.2d 372 (5th Cir. 1987) (defining term "defendant's facilities"); Lelsz v. Kavanagh, 807 F.2d 1243↩ (5th Cir. 1987) (holding District Court without jurisdiction to enforce consent decree on State law grounds).
2. The record does not explain the $ 45 discrepancy between this figure and the amount of income which petitioners reported on Schedule C. ↩