**Jim WADE et ux., Madeline H. Wade,
Appellants,**

v.

Jac A. AUSTIN, d/b/a Jac A. Austin Co.,
Realtors, Appellee.

No. 8247.

Court of Civil Appeals of Texas,
Texarkana.

May 27, 1975.

Robert F. Ashley, Ashley & Welch, Dallas, for appellants.

Fred H. Benners, Benners, Shettle & Hill, Dallas, for appellee.

RAY, Justice.

This is a suit for a realtors commission based upon an exclusive listing agreement, plus attorney's fees. Appellee (plaintiff) Jac A. Austin, d/b/a Jac A. Austin Co., Realtors, a duly licensed Texas real estate broker, brought suit against Jim Wade and wife, Madeline H. Wade, appellants (defendants) to recover a realtors commission of six per cent of the sales price of the property and attorney's fees under Article 2226, Vernon's Tex.Rev.Civ.Stat.Ann. plus

interest at the rate of six per cent per annum from October 24, 1972.

The trial court determined as a matter of law that the exclusive listing agreement was not unconscionable, and then submitted the fact issues to a jury for its determination. The court entered judgment in favor of appellee for the sum of $13,500.00 with interest at the rate of six per cent per annum from October 24, 1972 until paid, plus attorney's fees in the sum of $6,500.00 with six per cent interest per annum from the date of the judgment until paid, and provided that the sum of $6,500.00 for attorney's fees should be reduced by $1,500.00 to $5,000.00 in the event no application for writ of error or other appeal was thereafter initiated to the Supreme Court of Texas; and further provided, that the sum of $5,000.00 should be reduced by an additional $1,500.00 to $3,500.00 in the event no appeal was taken to the Court of Civil Appeals; and all court costs incurred.

Appellants have perfected their appeal and submit twenty points of error for our consideration.

The contract made the basis of this suit was entered into by and between the appellants and the appellee on August 29, 1972, and was to continue for a duration of ninety days thereafter. In accordance with the contract, appellee listed the appellants' property located at 3918 Normandy, Dallas, Texas, with the Multiple Listing Service of the Dallas Board of Realtors. Appellee Austin also ran two newspaper advertisements in the classified section of the Dallas Morning News, advertising the property for sale on the second and third days of September 1972. The property appeared in the Multiple Listing Service book for the North Dallas Sector on September 8, 1972. The property was shown to two prospective purchasers by appellee. On September 26, 1972, the appellee conducted a Multiple Listing Service open house and showed the property to members of the Dallas Real Estate Board. No sign was placed in the yard of the house advertising the property for sale because appellants had asked appellee not to do so.

On September 21, 1972, appellant Jim Wade called appellee to tell him that he had been called by a David Florence, who had informed appellant Wade that he was interested in purchasing the property. Mr. Florence further stated that he did not want to work through a real estate broker. Appellee Austin contacted Mr. Florence on September 21, 1972, and Mr. Florence again stated that he did not want to work through a real estate broker.

Mr. Florence submitted to Jim Wade a written offer to purchase his property. Appellant Wade took the Florence offer to appellee Austin on September 28, 1972, for appellee's advice concerning such offer. Appellee advised appellant Wade that the Florence offer would require Wade to obtain a current survey and that the survey deletion exception as required in the offer would be a fifteen per cent additional charge to the cost of the title policy that Wade would be required to pay. Austin further advised Wade that Wade was at the negotiating stage and this was the time to make a counter offer if appellant so desired. Appellant Jim Wade stated that he desired to make a counter offer for the sale of the property in the sum of $265,000.00. Appellee then marked out the price of $200,000.00 on the Florence offer and wrote in the figure $265,000.00 and advised appellant Jim Wade to initial that change and all other changes that had been made in the Florence offer. Jim Wade then initialed the changes which had been made in the Florence offer.

Appellant Wade delivered the Florence offer with the changes and initials to Mr. Florence on September 29, 1972. Wade called Florence on October 6, 1972 and went to his office and negotiated for the sale of the property at a price of $225,000.-00. Wade and Florence entered into a contract of sale for the property on October 6, 1972.

Appellant Wade elected to negotiate directly with the prospective purchaser, David Florence, and at appellants' request, appellee Austin did not attend the closing of the sale at the title company and, therefore, did not receive his commission at the closing. Upon appellants' refusal to pay appellee a settlement offer of a five per cent commission, appellee Austin filed suit for the full six per cent commission set out in the exclusive listing agreement.

Under the contract, appellee had the sole right to sell the property during the listing period, and the contract expressly provided that appellee would be compensated for services rendered in the event of sale, regardless of who sold the property.

Jac Austin was out of town to see his new born grandchild at the time Wade concluded direct negotiations with Florence. However, other members of the Jac A. Austin Co. were available during the complete transaction.

Appellants contend that appellee had not endeavored with all reasonable efforts to find a purchaser for appellants' real estate and, consequently, should not be compensated. However, the jury expressly found that appellee did endeavor with all reasonable efforts to find a purchaser for the property, and we have concluded that the record substantiates that finding.

Appellants' first point of error contends that appellee Austin was not entitled to recover reasonable attorney's fees pursuant to Tex.Rev.Civ.Stat.Ann. art. 2226, because appellee Jac A. Austin, was not the procuring cause of the sale of the real property nor did he produce a purchaser ready and willing to purchase the property on the terms of the contract. Appellants did not request a "procuring cause" special issue nor did they request findings of fact relative to procuring cause. However, we are convinced that the "procuring cause" contention is without merit under an "exclusive right to sell" contract. The test is whether the broker rendered services as required by the contract and whether the property is sold during the listing period, regardless of by whom. The purpose of the "exclusive right to sell" contract is to avoid a broker rendering all reasonable efforts to sell a piece of listed property and then encounter the claim of the owner that the broker is not entitled to be compensated because the owners sold the property directly without the broker being the procuring cause. The "procuring cause" contention is tenable under an "exclusive agency to sell" contract but not "exclusive agency with sole right to sell" contract.

It is undisputed that the Wade property was sold to Florence during the listing period, and the jury found that appellee endeavored with all reasonable efforts to find a purchaser for the Wade Real Estate on the terms set forth in the exclusive listing agreement.

The evidence is undisputed that appellee performed the usual and customary services consistent with reasonable efforts to find a purchaser for the Wade Real Estate and only failed to perform those services which Wade asked Austin not to perform.

Appellee brought suit for specific performance under the contract asking to be paid for services rendered, as requested and contracted for by appellants. The exclusive listing contract provided, "If said property is sold prior to the termination of this agreement, whether by you, by me, or by any other person, or if the property is sold within 180 days after the termination of this agreement to anyone with whom you or any member of Mutltiple Listing Service negotiated during the period of this contract and of whose name you have notified me by written notice delivered to me personally or mailed to me at the address stated below within 10 days after the termination of this agreement, in either such event, I agree to pay to you in Dallas, Texas, a commission in cash equal to 6% of the selling price . . . .".

In Texas Reserve Life Insurance Co. v. Security Title Company, 352 S.W.2d 347, 352 (Tex.Civ.App. San Antonio 1961, writ ref'd n.r.e.). the court said, "It has been repeatedly held by the courts of this State that the services of a real estate broker in effecting a sale of real estate are personal services within the meaning of Article 2226, supra, and in suits by such brokers for commission on such sales, attorney's fees are properly allowed. Bradshaw v. Marcum, Tex.Civ.App., 321 S.W.2d 352; Reinke v. West, Tex.Civ.App., 303 S.W.2d 419; Craft v. Netherton, Tex.Civ.App., 276 S.W.2d 855."

The contract for the sale of the real property was consummated between the Wades and Florence, during the 90 day period of the exclusive listing agreement, the property sold and title delivered with the advice of and consultation with appellee Austin and such other service as appellants would allow appellee to perform. The contract between the seller and purchaser of the real estate involved, was fully performed. Appellee had fully performed the obligations required of him under the terms of the exclusive listing agreement (a bilateral contract) and sought the specific performance of that portion of the contract allowing him 6% of the sales price for his realtors' commission. Appellants did not breach their contract by revoking the exclusive listing agreement, but only refused to pay the realtors commission. The amount of the attorney's fee having been stipulated between the parties, the liability therefor was established by appellee Austin.

■ Under the pleadings of appellee for specific performance, as contrasted to a suit for breach of contract, and under the facts of this case in which appellee fully performed his end of the bargain under the exclusive listing agreement by extending numerous services in behalf of his client, and where the Wades had not revoked the exclusive listing agreement prior to substantial performance by Austin, we conclude that the trial court properly allowed appellee his attorney's fee pursuant to Article 2226, Tex.Rev.Civ.Stat.Ann.

Appellants' first point of error is overruled.

■ In point of error number two appellants contend that the trial court erred in overruling their challenge for cause related to the juror James Philip Glasgow. Glasgow stated that he derived his income from the brokerage of real estate and that he did not know if he were capable of *answering* whether he could be fair and impartial in this case. However, he later stated that he could be fair and impartial and that he could make an impartial decision. Subsequently, Glasgow was asked by appellants' attorney, "All right, then I will simply ask you if you have any reservations about your ability to make an impartial decision?"

Glasgow answered, "Yes, I do. As far as—I'm waiting for that moment to see. I think that my decision would be impartial, but I think that being in the shoes and making my income that way, that I tend to have the feeling—I can identify, that's my environment, I can identify—not to say anything against the Defendant whatsoever. I just mean that I think that I can be impartial, but . . .".

Later juror, Homer E. Warlick, III, a high school and college friend of Calvin Hill of Fred Benner's Law Firm, became juror number 24 when another juror was excused. Appellants exercised all six of their peremptory challenges which included using one of their peremptory challenges on the juror Glasgow. Appellee exercised all six of his peremptory challenges. Because there were no double strikes, the juror Warlick became juror number 12 selected to serve on the jury that tried the case.

Appellants made no objection to the court concerning Mr. Warlick's being an objectionable juror.

The voir dire testimony of Glasgow raised a fact question for the trial court to decide regarding the existence or not, of bias or prejudice so as to disqualify Mr. Glasgow for cause. The trial court had an opportunity to hear the testimony of the prospective juror, to observe his demeanor and to determine whether Mr. Glasgow could be a fair and impartial juror. Appellants did not establish that Glasgow would be biased or prejudiced as a matter of law. We conclude that the trial court was in a better position to evaluate the sincerity and capacity for fairness and impartiality of the juror than this court. The Swap Shop v. Fortune, 365 S.W.2d 151 (Tex.1963); Compton v. Henrie, 364 S.W.2d 179 (Tex.1963). In order to have properly complained of having to use a peremptory challenge to strike Mr. Glasgow from the jury list, and thereafter having to take an objectionable juror (Warlick), it was necessary that appellants object to taking Mr. Warlick as a juror before appellants exercised their peremptory strike of Mr. Glasgow. Carpenter v. Wyatt Construction Company, 501 S.W.2d 748 (Tex.Civ. App. Houston 14th Dist.1973, writ ref'd n. r.e.); O'Day v. Sakowitz Brothers, 462 S. W.2d 119 (Tex.Civ.App. Houston 1st Dist. 1970, writ ref'd n.r.e.); and, Hammon v. Texas & New Orleans Railroad Company, 382 S.W.2d 155 (Tex.Civ.App. Tyler 1964, writ ref'd n.r.e.). Appellants' second point of error is overruled.

■ We have reviewed appellants' point of error number three suggesting that the trial court erred in refusing to submit special issues and an instruction to the jury on the defense of fraud in the inducement to enter into the exclusive listing agreement. It is doubtful that the pleadings or the evidence would support the submission of the requested issues or instruction, but more fundamental is the fact that the jury found that appellee did endeavor with all reasonable efforts to find a purchaser for appellants' property. Thus, such was tantamount to a finding that appellee Austin had fully performed his end of the bargain. The appellants did not revoke the exclusive listing agreement, but made the sale of their property after accepting and following the advice of their realtor, Jac Austin. Under the facts of this case, appellants have waived their right of recision based upon fraud in the inducement to enter into the exclusive listing agreement. Rosenbaum v. Texas Bldg. & Mortg. Co., 140 Tex. 325, 167 S.W.2d 506, 508 (Tex. Com.App.1943, opinion adopted). There the court stated " . . . if a person who is induced by fraud to enter into a contract continues to receive benefits under the contract after he becomes aware of the fraud, or if he otherwise conducts himself in such manner as to recognize the contract as subsisting and binding, he thereby affirms the contract and waives his right of rescission. An express ratification is not necessary; any act based upon a recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it has the effect of waiving the right of rescission."

The testimony reveals that after David Florence had contacted Jim Wade and Wade had sought the advice of Jac Austin concerning the future negotiations between Wade and Florence, there was no attempt by Jim Wade to cancel the exclusive listing agreement with realtor, Jac Austin. Jim Wade testified that after it was decided that he would negotiate directly with Florence and seek the advice of Jac Austin, who would remain in the background, that Wade never had any discussion with appellee about wanting to cancel the listing agreement. Austin was continuing to list the property and trying to do what he could to sell the property. Jim Wade stated, "I intended for him [Jack Austin] to try and sell it and advise me on my dealings with Mr. Florence." Appellants' point of error number three is overruled.

Appellants' points of error four through sixteen complain of the finding of the trial court that the exclusive listing agreement was not unconscionable.

The testimony established that a person wishing to list his residential property with the Multiple Listing Service must sign the form exclusive listing agreement made the basis of this suit. The listing must be for a minimum number of days and the agreement provides for payment of a commission to equal to six per cent of the selling price of the property if sold during the term of the listing, whether sold by the realtor, owner, or any other person. It is not compulsory that a real estate broker belong to the Multiple Listing Service, but only a member of the Multiple Listing Service can list property with the Multiple Listing Service in Dallas.

Appellants called appellee and requested appellee to sell their property and to place the listing with the Multiple Listing Service.

Section 2.302 of the Tex.Bus. & Comm. Code Ann., V.T.C.A., gives the court the power to determine, as a matter of law, whether a contract is unconscionable at the time it was made. If it appears to the court that the contract or any clause thereof may be unconscionable, then the court shall afford the parties a reasonable opportunity to present evidence as to the contract's commercial setting, purpose and effect to aid the court in making the determination of unconscionability. This section is intended to allow the court to pass directly on the unconscionability of the contract or particular clause therein and to make a conclusion of law as to its unconscionability. The official code comment states the following:

"The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppressions and unfair sur-

prise (Cf Campbell Soup Company v. Wentz, 172 F.2d 80, 3d Circuit 1948) and not of disturbance of allocation of risks because of superior bargaining power." In 1 Anderson's Uniform Comm. Code 147, the author states relative to Section 2.302 that "the Code gives the court power to refuse to enforce unconscionable contracts or clauses but does not define unconscionability. To some extent content may be given to the concept by regarding this power as the successor to the historic power of equity courts to refuse to grant specific performance on the ground of unconscionability, and of courts of law to refuse to enforce contracts on grounds of public policy.

"The Code provision is not designed, however, to relieve a person from what proves to be a bad bargain, for the principle is not aimed at 'disturbance of allocation of risks because of superior bargaining power,' and the fairness of the contract at the time it was made is the time as of which the contract is to be judged."

In the instant case, we have reviewed the contract and have concluded that the trial court was correct in deciding that the exclusive listing agreement was not unconscionable.

Appellants contend that the exclusive listing agreement was unconscionable because it provided for the payment of a commission to the appellee in the absence of any services by appellee. We disagree with appellants. The plain language of the contract provides that appellee will file the listing with the Multiple Listing Service of the Dallas Board of Realtors. It further provides that the realtor shall endeavor with all reasonable efforts to find a purchaser for said real estate on the terms set forth and may take such actions to sell the property as the realtor may deem advisable in his discretion, including the listing of the property with cooperating brokers, as well as the other members of the Multiple Listing Service. It is undisputed that the listing was filed with the Multiple Listing Service of Dallas, and the jury found that

appellee had endeavored with all reasonable efforts to find a purchaser for the real estate. We do not have a case in which the realtor performed no services, and we do not pass upon that question.

■■■ In determining whether a contract is unconscionable or not, the court must look to the entire atmosphere in which the agreement was made, the alternatives, if any, which were available to the parties at the time of the making of the contract; the non-bargaining ability of one party; whether the contract is illegal or against public policy, and, whether the contract is oppressive or unreasonable. At the same time, a party who knowingly enters a lawful but improvident contract is not entitled to protection by the courts. "In the absence of any mistake, fraud, or oppression, the courts, as such, are not interested in the wisdom or impolicy of contracts and agreements voluntarily entered into between parties compos mentis and sui juris. Such parties to contracts have the right to insert any stipulation's that may be agreed to, provided they are neither unconscionable nor otherwise illegal or contrary to public policy. It has accordingly been said that, almost without limitation, what the parties agree upon is valid, the parties are bound by the agreement they have made, and the fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily. A contract is not unenforceable on the ground that it yields a return disproportionate to the expenditures in time and money, where there has been no mistake or unfairness and the party against whom it is sought to be enforced has received and enjoyed the benefits." 17 Am.Jur.2d 561 Contracts, Sec. 192, Improvident, oppressive, or unconscionable agreements. Two types of abuses must generally be present to produce a finding of unconscionability. The first abuse is a procedural abuse which may arise in the contract formation, such as the nonbargaining ability of one party. The second type of abuse usually required to be present to warrant a finding

of unconscionability would be an abuse concerning substantive contract terms. Whether the printed terms of a form contract are so one-sided as to be unreasonable is an example of a substantive abuse. See Spanogle, Analyzing Unconscionability Problems, 117 U.Pa.L.Rev. 931, at 932 (1969).

■■ There appears to be only one case construing Section 2.302 of the Tex.Bus. & Comm. Code Ann. as it related to a listing agreement such as that with which we are concerned in the present case. In Kaye v. Coughlin, 443 S.W.2d 612 (Tex.Civ.App. Eastland 1969, no writ) the court concluded that an exclusive listing agreement similar to the one here involved, was not unconscionable at the time that it was made and that the contract contained no provisions which were against public policy. However, we must point out that the court stated, "We find nothing in the record to indicate that the appellee contended in the trial of the case that any portion of the listing contract was unconscionable." There the court awarded Kaye his six per cent commission under the terms of the exclusive listing contract though Kaye and his agents were not the procuring cause of the sale of the property. The court concluded that the expressed provisions of the contract were complied with when the realtor showed the property to prospective purchasers who subsequently purchased the property directly from the owner after the ninety day listing period but within thirty days following the termination of the listing period as provided for in the contract.

Our determination of the circumstances surrounding the Dallas exclusive listing agreement and the entering into the agreement by the parties does not lead us to the conclusion that the agreement is unconscionable.

Appellants do not contend that the contract violates public policy or any particular statute.

Appellants urge that a procedural abuse existed which made the listing contract un-

conscionable. The Wades state that the contract was oppressive because they were forced to accept all the terms of the exclusive listing agreement and, therefore, had no bargaining power when they entered into the agreement. Appellants had listed other property with appellee apparently on similar terms and specifically requested that this listing be filed with the Multiple Listing Service. There were alternatives available such as an open listing contract, an exclusive agency to sell, a special contract between the parties and the right to sell the property themselves without using a realtor. Thus, appellants had other methods by which they could have elected to dispose of their property, but they voluntarily chose an exclusive right to sell contract which afforded them the benefits of the Multiple Listing Service which they would not have otherwise had. This meant that their property had the possibility of being exposed for sale by all of the members of the Dallas Board of Realtors as well as other licensed realtors. Procedural abuse is not present in this case.

Appellants' contentions that substantive abuse existed is also without merit. Appellee was required to file the listing with the Multiple Listing Service and to endeavor with all reasonable efforts to find a purchaser for the real estate, but the method of finding a purchaser is left to the realtor. Appellee used the customary methods such as showing the property, advertising, taking calls from other realtors, cooperating with other brokers, filing the listing with the Multiple Listing Service and allowing other members of the Multiple Listing Service to show the property.

We do not believe appellants have suffered any injury by the failure of the trial court to make and file appellants' requested findings of fact and conclusions of law in view of what we have already said relative to unconscionability. Appellants' points of error four through sixteen are overruled.

■ This court has considered appellants' seventeenth point of error in which it is contended that the exclusive listing agreement is unenforceable because of the lack of mutuality. In view of our holding that appellee had fully performed his end of the bargain, the contract is therefore not now subject to recision for lack of mutuality. 31 Tex.Jur.2d 238 Contracts, Sec. 91 Performance of agreement. Appellants' point of error number seventeen is overruled.

■ In appellants' points of error eighteen and nineteen it is urged that the findings of the jury in response to special issues 1 and 2 were against the overwhelming weight and preponderance of the evidence. In special issue No. 1 the jury found that Jac A. Austin Co., Realtors, endeavored with all reasonable efforts to find a purchaser for the Wade Real Estate on the terms set forth in the exclusive listing agreement and in special issue No. 2 found in favor of appellee Austin on a negative submission of the same issue. The testimony and evidence presented at the trial support the findings of the jury. Appellants' points of error eighteen and nineteen are overruled.

We have examined appellants' twentieth point of error stating that the cumulative effect of all the errors established the appellant did not receive a fair trial and would require a reversal of the judgment. Since we have found no error committed by the trial court, appellants' twentieth point of error is overruled.

The judgment of the trial court is affirmed.