# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00778-CV

---

**Ferrol O. Angell and Betty J. Angell, Appellants**

**v.**

**Clinton W. Culpepper and Candace Culpepper Light, Appellees**

---

### FROM THE 20TH DISTRICT COURT OF MILAM COUNTY
### NO. CV39312, JUDGE BURT CARNES, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Ferrol O. Angell and Betty J. Angell (collectively, Angells; individually, by first name) appeal from a declaratory judgment regarding the nature and enforceability of a contract for an option to purchase land. The Angells sued Clinton W. Culpepper and Candace Culpepper Light (collectively, Buyers; individually, by first name) on several theories and sought a declaratory judgment that the parties' original contract was binding. The trial court granted summary judgment to Buyers rejecting the Angells' claims and declaring that the option contract between Buyers and the Angells was unambiguous and enforceable.

On appeal, the Angells contend that Buyers were not entitled to summary judgment because they did not prove that their agreement was unambiguous and because there were fact issues about whether the Angells' claims were time-barred and whether the fraud and negligent-

misrepresentation claims lacked merit. We will affirm in part and reverse in part the judgment and remand the cause for further proceedings.

## BACKGROUND

The Angells owned a 257.66-acre tract in Milam County ("the Property"). They wished to sell 116 acres of it and approached their neighbor, Hilton Culpepper. Hilton, who was farming the land, declined to buy it, but notified his children, Buyers, who decided to buy the 116 acres. Buyers owned the land next to that tract. Hilton and Ferrol negotiated the terms of the sale to Buyers, and they discussed creating a legal mechanism through which Buyers might purchase the remaining 141.66 acres. The Angells did not have direct contact with Buyers.

The parties signed the document entitled "Contract"[1] on January 31, 2014, concerning the 257.66-acre tract. The Angells agreed to sell 116 of those acres to Buyers for $2,727 per acre. The Angells' heirs were given a right to repurchase the 116-acre tract for the greater of $2,727 per acre or the market value if Buyers tried to sell to a non-family third party within twenty years. The Angells also granted Buyers the right of first refusal to buy the remaining 141.66-acre tract for the lesser of $2,727 per acre or the reasonable market value for a twenty-year period; Buyers would have 180 days to exercise the right from the date they received written notification of the Angells' intent to sell the 141.66 acres.

---

[1] We will refer to this document as "Contract" because that is its title. This usage shall not be interpreted as a conclusion regarding its validity and enforceability as either a standalone document or a part of a broader agreement between the parties.

Mark Humble, an attorney who had worked extensively for the Angells, was hired to prepare the closing documents.[2]  Beginning two days before closing, Humble and Clinton communicated regarding the terms of a new document called the Option Agreement for the 141.66-acre tract, sending edited drafts to each other.

On March 6, 2014, the transaction closed, with the Angells signing documents at the title company.  The parties signed a Warranty Deed (Deed) conveying the 116 acres, which was filed in the Milam County records.  The Deed states that it is delivered by grant of a vendor's lien note of $316,332, which equals $2,727 per acre for 116 acres.  The Deed recites easements reserved to the Angells that were not mentioned in the Contract.  Also included in the Deed is a reservation of a right of first refusal in the Angells and their heirs to repurchase the 116-acre tract upon notification of the terms of a proposed sale by the Buyers to a third party (which includes family members); the Angells would have thirty days to repurchase the 116 acres on the terms offered to the third-party buyer.  The right of first refusal lasts at most twenty years.

On that same date, the parties also signed the Option Agreement and a Memorandum of Option.  The Option Agreement gave Buyers the option to purchase a 257.00-acre tract less a 116.00-acre tract; they retained this option for twenty years with no obligation to buy.  Attached to the Option Agreement were descriptions of the full 257.66-acre tract and the 116.00-acre tract excepted from the Option Agreement.  The Option Agreement concerned the same tract as the right of first refusal in the Contract, with different rights for the parties and a different pricing structure.  The Option Agreement recites that it and the Memorandum of Option are the entire agreement between the parties relating to the option granted; no consideration aside

---

[2]  The Angells assert that Humble was hired by the title company, but Buyers assert that title companies can neither prepare deeds nor hire attorneys to prepare deeds for third parties.

from the new terms was included in the Option Agreement's terms. The Memorandum of Option was filed in the Milam County records and also refers to a 257.00-acre tract less a 116.00-acre tract, with attachments describing the 257.66-acre tract and the 116.00-acre tract.

On July 24 and 26, 2017, the parties signed a Modified Subordination document in connection with a loan request by the Angells. The document recites that Buyers have "an option to purchase" the 141.66-acre tract. Buyers agreed not to exercise the option during the term of a Deed of Trust for an amount less than that owed to repay the bank loan to the Angells; the parties agreed that any proceeds from an exercise of the option would go first to the bank to repay the loan, then to the Angells. The bank agreed to notify Buyers of any default by the Angells and to give Buyers the ability to cure the default or purchase the note evidencing the bank loan.

On December 21, 2018, the Angells' attorney sent a letter telling the Buyers "[m]y clients fully intend to honor the terms of the Option Agreement." He asked Buyers to notify him within ten days whether they intended to purchase the 141.66-acre tract referenced in the Option Agreement, which was attached to the letter. By letter dated December 30, 2018, Clinton responded by pointing out that the Option Agreement gave Buyers the option to choose whether to purchase the property at any time during the twenty-year term. Ferrol stated in his affidavit that this was inconsistent with the Contract and his discussions with Hilton.

The Angells sued Buyers, requesting a declaratory judgment and recovery of damages under breach-of-contract and tort theories. In their live Fourth Amended Petition, the Angells sought a declaratory judgment on several grounds:

- that the Option Agreement is void because it was procured by fraud, was not the product of a meeting of the minds or mutual assent, was the product of unilateral mistake, and was not supported by consideration;

4

- that the Option Agreement is not valid or enforceable because it is unconscionable and creates an unreasonable restraint on alienation;

- that the Contract is the entirety of the agreement for the sale of the 116 acres and the potential sale of the 141.66 acres; and

- that Buyers' right of first refusal expired 180 days after they were notified in writing on December 29, 2018.

The Angells requested three alternative declarations:

- that the Option Agreement is vague and ambiguous and that any ambiguity should be resolved in the Angells' favor because it was drafted at the direction of Clinton;

- that the Option Agreement merely gives Buyers[3] the right of first refusal to purchase the 141.66-acre tract when the Angells decide to sell it; and/or

- that the Option Agreement unjustly enriches Buyers at the Angells' expense.

The Angells also claimed damages under theories of breach of the Contract, statutory fraud, and negligent misrepresentation, and requested rescission or reformation of the Option Agreement.

Buyers generally denied the Angells' claims and counterclaimed for breaches of contract and for a declaratory judgment. Buyers alleged that the Angells committed an anticipatory breach by repudiating their obligations under the Option Agreement, and alternatively that they breached their obligation under the Contract by giving Buyers only ten days to exercise their right of first refusal rather than the 180 days set out in the Contract. Buyers requested a declaration that the Option Agreement is valid and binding, that the Option Agreement permits Buyers to compel a sale of the 141 acres at any time within the twenty-year term, and that the Angells cannot require

---

[3] The petition asks that the court declare that the Option Agreement "gives *Plaintiffs* the Right of First Refusal to purchase the 141.66-acre tract in question when Plaintiffs decide to sell the property," but the italicized term appears to be a clerical error.

Buyers to exercise the option within that twenty-year term. Buyers also raised affirmative defenses including ratification, modification, waiver, statute of limitations, and statute of frauds.

Buyers moved for summary judgment on all claims. They assert that the Contract is not binding because there is no evidence that it satisfied the statute of frauds or, alternatively, that the Contract was modified by the Option Agreement. They also assert that the Angells' claims are barred by limitations. Buyers further assert that the Angells' fraud and negligent-misrepresentation claims fail because the Angells have no evidence of misrepresentations or false promises, and that any misrepresentations were contradicted by the plain language of the Option Agreement. Buyers contend that the Angells' unconscionability defense fails as a matter of law, that the Option Agreement is not an unreasonable restraint on alienation, and that their unilateral and mutual-mistake theories fail as a matter of law.[4] Finally, Buyers allege that the Angells ratified the Option Agreement.

The trial court granted Buyers' motion for summary judgment and dismissed all of the Angells' claims. The trial court also granted Buyers' request for a declaratory judgment, ruling that the Option Agreement is an option and not a right of first refusal. The trial court awarded Buyers $80,000 in attorneys' fees, plus additional awards for appellate proceedings. The court did not specify a basis for these decisions.

---

[4] Buyers also moved for summary judgment against a claim for mutual mistake. We find no claim of mutual mistake in the Angells' Fourth Amended Petition except to the extent that unilateral mistake by one party, and knowledge of that mistake by the other party is equivalent to mutual mistake. *See Davis v. Grammar*, 750 S.W.2d 766, 768 (Tex. 1988).

6

## STANDARD OF REVIEW

Buyers raised both no-evidence and traditional summary-judgment grounds. The no-evidence and traditional motions are somewhat interwoven among the claims.

We review the trial court's granting of summary judgment de novo, taking as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). A trial court properly grants a defendant's traditional motion for summary judgment if the defendant disproves at least one element of each of the plaintiff's claims or establishes all elements of an affirmative defense to each claim. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018).

A no-evidence summary-judgment motion asserts that no evidence exists as to at least one essential element of the non-movant's claims on which the non-movant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). When a no-evidence motion for summary judgment is filed, the burden shifts to the non-movant to produce evidence that raises a genuine issue of material fact as to each challenged element of his claims. Tex. R. Civ. P. 166a(i); *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020). A trial court properly grants a defendant's no-evidence motion for summary judgment if the plaintiff has produced no more than a scintilla of evidence on an essential and challenged element of the cause of action—that is, if the plaintiff's evidence does not rise to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Tatum*, 554 S.W.3d at 625.

7

## DISCUSSION

The Angells raise five issues on appeal against the summary judgment. They contend that Buyers were not entitled to a declaration that they have a valid, enforceable option on the 141.66-acre tract because the parties' agreement is ambiguous and Buyers did not conclusively establish either that the Contract was modified or that the Option Agreement is enforceable as a standalone agreement. The Angells further contend that fact issues exist on every one of the Angells' defenses. With respect to their affirmative claims, the Angells assert that Buyers failed to conclusively establish that the claims are barred by limitations, that fact issues exist on their claims for statutory fraud and negligent misrepresentation, and that the attorneys' fees award should be reversed along with the rest of the judgment.

## I. The trial court erred by granting summary judgment against some of the Angells' defenses.

By their second issue, the Angells contend that Buyers did not conclusively disprove the Angells' defenses of unconscionability, unreasonable restraint on alienation, unilateral mistake, lack of consideration, and lack of meeting of the minds.

### A. These defenses are not barred by limitations.

Buyers contend that these defenses, like the Angells' similar claims for affirmative relief, are barred by limitations for the same reasons Buyers assert against the affirmative claims. However, as a general rule, statutes of limitations do not apply to bar defenses. *Tamimi Glob. Co., Ltd. v. Kellogg Brown & Root, L.L.C.*, 483 S.W.3d 678, 702 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Moreover, Buyers did not assert that the defenses were barred by limitations in their Second Amended Motion for Summary Judgment, so that theory was not a basis for the

8

summary judgment. *See* Tex. R. Civ. P. 166a(c) (describing movant's summary judgment burden to establish that it "is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response"). Buyers' assertion on appeal that we can affirm the judgment granting Buyers declaratory relief on the basis that the Angells' defenses are barred by limitations fails.

**B.** **There is a genuine issue of material fact on whether the Option Agreement is unconscionable or an unreasonable restraint on alienation of property.**

The Angells assert that the declaratory judgment favoring Buyers lacks merit because there is at least a fact question regarding whether it is unconscionable. The bar for establishing unconscionability is very high because the defense allows an otherwise valid contract to be invalidated. *Ridge Nat. Res., LLC v. Double Eagle Royalty, LP*, 564 S.W.3d 105, 131 (Tex. App.—El Paso 2018, no pet.). Generally speaking, an agreement is unconscionable if it is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding).

Though unconscionability is a question of law for courts to decide,[5] that decision depends on the existence of facts that illustrate unconscionability. *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.—Waco 2005, pet. denied). Courts examine both the procedural aspect (how the parties arrived at the terms in controversy) and the substantive aspect (the overall fairness of the contract). *Id.* The grounds for substantive abuse must be sufficiently shocking or gross to compel the court to intercede, and the same is true for procedural abuse—the circumstances surrounding the negotiations must be shocking. *Id.*; *see also Ridge*, 564 S.W.3d at 131.

---

[5] *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006).

To assess procedural unconscionability, we examine (1) the entire atmosphere in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining ability" of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable. *Ski River*, 167 S.W.3d at 136 (citing *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. Civ. App.—Texarkana 1975, no writ)). It is important to consider whether there is any gross disparity in the values exchanged. *Id.* Gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms. *Id.* Factors that may contribute to an unconscionable bargaining process include: (1) knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; and (2) knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement. *Id.* The aim is to prevent oppression and unfair surprise. *Poly-Am.*, 262 S.W.3d at 348.

Viewing the record in the light most favorable to the Angells, we cannot say that there is no genuine issue of material fact. Though Ferrol and Buyers' father had discussed some aspects of the January Contract, including Buyers' desire for a right of first refusal, there is evidence that the parties did not negotiate the terms of the Option Agreement with each other. Clinton swore in his affidavit that he told the Angells he needed an option to buy the 141.66-acre tract, but Ferrol said he did not talk to Buyers. Ferrol swore in his affidavit that he knew he did not want to give an option that would lock up his property for up to twenty years and obligate him to sell the property; he said he relied on his conversations with Buyers' father and the Contract as

10

being the terms of the transaction related to the sale of the 116-acre tract, even though both it and the Option Agreement also concerned a potential sale of the 141.66-acre tract. Hilton said he was surprised to learn that Buyers sought an option.

Clinton and Humble revised the Option Agreement several times in the two days before the closing using the title company as an intermediary, but there is no evidence that the Angells were informed of this activity. Humble and the Angells deny that he acted as their attorney in this transaction. Clinton had been a licensed attorney for sixteen months at closing. While the Angells are not attorneys, they had been party to about eighteen real-estate transactions in Milam County. There is evidence that the Angells learned of the Option Agreement when they went to the title company to sign the closing documents. The Option Agreement, however, is only two pages long and states that it establishes an option; it is echoed by the Memorandum of Option signed concurrently.[6] Though the standard for unconscionability is very high, we cannot say as a matter of law that the evidence conclusively disproves that this process was gross or shocking.

Similarly, we cannot conclude as a matter of law that the terms of the Option Agreement are not gross or shocking. The Option Agreement unambiguously permits Buyers to buy the 141.66-acre tract for the next twenty years for at most the per-acre price they paid for the 116-acre tract. Though the overall transaction between the parties included additional easements and expanded the Angells' rights regarding repurchasing the 116-acre tract compared with their rights under the Contract, Buyers provided no monetary compensation above the amount they had previously agreed to pay for the 116 acres in order to obtain this price cap. Also, while we must assess the totality of the circumstances at the time the contract was formed, *see Ski River*,

---

[6] Both contain the discrepancy regarding the acreage in the total parcel—257.00 versus 257.66 acres.

11

167 S.W.3d at 136, Buyers' refusal to exercise their option in 2018 when the Angells wanted to sell illustrates the disparity in power inherent in the Option contract; that is strikingly different from the right of first refusal the Angells expected to see when they went to closing, under which the Angells could decide when to sell and had only to offer Buyers the chance to purchase the tract. Viewing the evidence most favorably to the Angells, we cannot say that Buyers are entitled to judgment as a matter of law that the Option Agreement is not unconscionable.

We also cannot say that the record shows conclusively that the Option Agreement's restraint on alienation is reasonable. The policy against unreasonable restraints on alienation balances the desire to avoid hindering the right to sell property with the desire to allow parties to contract as they see fit. *Procter v. Foxmeyer Drug Co.*, 884 S.W.2d 853, 862 (Tex. App.—Dallas 1994, no writ); *see also Mattern v. Herzog*, 367 S.W.2d 312, 320 (Tex. 1963).

There is no bright-line rule for what is unreasonable. The Tyler court affirmed a trial court's conclusion that a lifetime term to exercise a right of first refusal at a fixed rate for land (adjusted for market value of improvements) was sufficiently limited and therefore not unreasonable. *Randolph v. Terrell*, 768 S.W.2d 736, 739-40 (Tex. App.—Tyler 1987, writ denied). In *Mattern*, the supreme court held that option agreement with no specific time-period for its exercise implicitly required exercise within a reasonable time. 367 S.W.2d at 319. The court cautioned that an option is not automatically valid if it must be exercised only within the period prescribed by the rule against perpetuities. *Id.* at 319. In another case in which an option agreement did not specify a time-period for exercising the option, the court found that the option-holder who did not exercise his option within four years did not exercise it within a reasonable time. *Maupin v. Dunn*, 678 S.W.2d 180, 183 (Tex. App.—Waco 1984, no writ). Ultimately, as

the supreme court noted in *Mattern,* what a reasonable time would be depends upon the facts and circumstances.  367 S.W.2d at 315.

Here, the Option Agreement restrains alienation by granting Buyers the right to purchase the 141.66-acre tract at any time over a twenty-year period for the market price at the time of sale up to a maximum of the per-acre price they paid for the 116-acre tract in 2014.  These terms contrast with the concurrently created right of first refusal allowing the Angells to repurchase the 116-acre tract if during that same twenty-year period Buyers decide to sell; in that provision, the Angells must pay the price Buyers agree to accept from a third-party buyer even if it exceeds the Buyers' original purchase price.  There is no evidence regarding whether the price the Angells must accept from the Buyers under the Option Agreement, capped for twenty years, is reasonable.  While the twenty-year restraint is shorter than options that have been found reasonable, it is longer than the four-year period found to be an unreasonably tardy exercise of an indefinite option.  The record before us, viewed most favorably to the Angells, raises a genuine issue of material fact as to the reasonableness of the restraint on alienation embodied in the Option Agreement.

C.      **The Angells' unilateral-mistake defense fails as a matter of law.**

Buyers moved for a no-evidence summary judgment against this defense, requiring the Angells to provide evidence on each element.  Buyers argue that a party's unilateral mistake is not grounds for undoing a contract, unless either (1) one party is unilaterally mistaken and the other party is aware of the mistake, or (2) the mistake is a "remediable mistake." *Kendziorski v. Saunders*, 191 S.W.3d 395, 407 (Tex. App.—Austin 2006, no pet.); *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988); *Volpe v. Schlobohm*, 614 S.W.2d 615, 617 (Tex. App.—Texarkana 1981, no writ) (remediable mistake).

There is no evidence in the record that Buyers knew the Angells did not want an option contract despite signing it. The affidavit statements that the parties did not discuss option versus right-of-first-refusal agreements and evidence concerning Clinton's involvement in drafting or editing the Option Agreement with a lawyer affiliated with the title company do not show anything about the Buyers' knowledge of the Angells' mindset, including that they were mistaken about the nature of the agreement presented and signed on March 6. The trial court did not err by granting summary judgment against the defense of mistake.

### D. Summary judgment on consideration was error.[7]

The Angells contend that Buyers did not conclusively establish that they supplied additional consideration to modify the right of first refusal in the Contract via the Option Agreement. The Option Agreement states that the option was granted "[f]or the mutual considerations contained herein," but there is nothing else in the Option Agreement that resembles consideration. The agreement gives Buyers the option to purchase the 141.66-acre tract during a twenty-year period for a price capped at the purchase price for the 116-acre tract. It does not in any way bind Buyers to purchase the property or give the Angells anything for that option.

Buyers contend that the Angells received consideration for the Option Agreement's modification of the Contract because they received rights in the Deed to the 116-acre tract that they were not entitled to receive under the Contract. These include (1) easements over the 116-acre tract; (2) inclusion of the Angells among the recipients of the grant of a right of first refusal

---

[7] Buyers did not list lack of consideration among the affirmative defenses they sought judgment against but, when arguing in favor of their request for declaratory judgment that the Option Agreement was binding as a modification of the Contract, they argued extensively that the record disproved the Angells' contention that there was no consideration for the Option Agreement. Accordingly, we will consider the issue.

14

to repurchase the 116-acre tract; (3) change of the price to exercise that right of first refusal from the greater of $2,727 per acre or the market price to the terms and conditions offered to a third-party buyer; and (4) expansion of the scope of potential buyers who trigger that right of first refusal from any third party who is not a family member to simply any third party. Buyers, however, do not provide any evidence as to why these terms in the Deed differ from the Contract provisions. There is no evidence when or why the Angells agreed to the terms in the Deed that differed from those in the Contract—i.e., whether they were consideration for the Option Agreement.

Buyers alternatively contend that this transaction could be viewed like a non-payment of nominal consideration recited in an option agreement, which the Texas Supreme Court found was not a barrier to enforceability of the contract. *1464-Eight, Ltd. v. Joppich*, 154 S.W.3d 101 (Tex. 2004). In that case, the agreement required $10 in consideration in exchange for an option to purchase lots within five years, but the $10 was not paid. *Id.* at 103. The court held that contracts are enforceable in the absence of payment of the nominal consideration so long as the option was to be exercised in a reasonable amount of time. *Id.* at 108-09. The court concluded that the contract before it met the standard.

Here, however, the Option Agreement did not recite any consideration from Buyers, and it established a twenty-year term. As we have discussed, we cannot say as a matter of law that the twenty-year term is reasonable on these facts. Without evidence that the Angells accepted the terms in the Deed that differed from those in the Contract as consideration for the change from the Contract's right of first refusal by the Option Agreement, we cannot say that Buyers proved they were entitled to summary judgment on this issue. We conclude that any summary judgment against the defense of lack of consideration was error.

15

E.    **Meeting of the minds not at issue on appeal.**

The trial court did not expressly grant judgment against the defense of lack of meeting of the minds.  Because Buyers did not seek summary judgment on basis of the lack of meeting of the minds in their motion, that ground was not an implicit basis for the summary judgment, and it will not be an independent ground for affirming or reversing the summary judgment.

F.    **Summary of issue two**

The trial court erred by granting summary judgment against the Angells' defenses of unconscionability, unreasonable restraint on alienation, and lack of consideration, but did not err by granting summary judgment against their defense of unilateral mistake.  We do not rule on the defense of lack of meeting of the minds because the trial court was not presented that theory and did not grant summary judgment on it.  We resolve issue two in part against the judgment and in part in its favor.

## II.    The trial court erred by declaring that the Option Agreement is a valid and enforceable contract.

Our conclusion that the trial court erred by granting summary judgment on three of the Angells' defenses renders unnecessary most of our review of the validity and enforceability of the Option Agreement because there are fact questions regarding its validity and enforceability. *See Poly-Am.*, 262 S.W.3d at 348 (unconscionable contract is unenforceable); *Meduna v. Holder*, No. 03-02-00781-CV, 2003 WL 22964270, at *5 (Tex. App.—Austin 2003, pet. denied) (mem. op.) (unreasonable restraint on alienation void and unenforceable) (citing *Gray v. Vandver*, 623 S.W.2d 172, 174 (Tex. App.—Beaumont 1981, no writ)).  Even if we were to conclude that the Option Agreement would be otherwise valid and enforceable—whether as part of a larger

16

agreement or on its own—we would have to reverse the declaration that the Option Agreement is valid and enforceable and remand the case for further proceedings on the defenses. We will address only those issues necessary to the disposition of the appeal. Tex. R. App. P. 47.1.

We will, however, address whether the declaratory judgment that the Option Agreement is valid and enforceable through being ratified by the Angells. The elements of ratification are (1) approval by act, word, or conduct, (2) with full knowledge of the facts of the earlier act, and (3) with the intent to validate the earlier act. *White v. Harrison*, 390 S.W.3d 666, 672 (Tex. App.—Dallas 2012, no pet.). "A party ratifies an agreement when—after learning all of the material facts—he confirms or adopts an earlier act that did not then legally bind him and that he could have repudiated." *Id*. The intent to give validity to the former transaction may be inferred from the existing facts and circumstances, as where a party retains the benefits of an invalid contract with full knowledge of the facts that make the contract voidable. *BPX Operating Co. v. Strickhausen*, No. 19-0567, 2021 WL 2386141, at *4 n.5 (Tex. June 11, 2021) (citing *Motel Enters., Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ)). Ratification may occur by express act or word, or it may be inferred from a party's course of conduct. *Id.*

Buyers point to two actions to support ratification. On July 24, 2017, the Angells signed a Modified Subordination agreement along with Buyers and a bank in order to get a loan secured by the 141.66-acre tract that is the subject of the Option Agreement; that document provides that "Culpepper has an option to purchase the above described property from Angell." Also, in a December 21, 2018 letter Angells' attorney told the Buyers "[m]y clients fully intend to honor the terms of the Option Agreement."

17

In the Modified Subordination, the Angells acknowledged that the option existed. However, to "approve" means to express a favorable opinion of something, to accept it as satisfactory, or to give formal or official sanction. *See* Approve, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/approve (last visited Oct. 11, 2021). Even if the acknowledgments "approved" the option, the evidence is mixed regarding whether the Angells made the statement with an intent to "validate" the option. The Angells made the statement in order to secure a loan from the bank with a deed of trust on the 141.66-acre tract; that intention is neutral toward the creation or exercise of the option. Ferrol stated in his affidavit that he had no intention to sell the 141.66-acre tract before the closing and had no intention to sign a document that could obligate him to sell that land the next day. Though Buyers contend that the Angells asked Buyers for additional benefits in obtaining the Modified Subordination process, the record does not support that characterization. In the Modified Subordination Buyers agreed not to exercise the option during the loan period for an amount less than the amount then owed to the bank; as the loan amount would not exceed $200,000 and the option price was $386,306.82, this promise did not change Buyers' option. In order to get the loan, the Angells asked Buyers to agree to certain limits on their exercise of the option. That is a separate agreement and is at least arguably not an additional benefit to the Angells under the Option Agreement.

While the 2018 letter states the Angells' intent to "fully honor" the terms of the Option Agreement, it immediately thereafter states terms inconsistent with that Option Agreement; that language is inconsistent with the stated intention to fully honor the option and does not show an intention to validate the actual terms of the Option Agreement.

18

We conclude that there is at least a fact question regarding whether the Angells ratified the Option Agreement. We resolve issue one against the judgment as it pertains to ratification, and do not reach the remainder of the concerns raised there because of our resolution of issue two concerning the Angells' defenses.

### III. The Angells' claims for breach of contract and declaratory judgment not barred by limitations.

By their third issue, the Angells argue that their breach-of-contract and declaratory-judgment claims are not barred by limitations.

The Texas Supreme Court stated that a "breach of contract claim accrues when the contract is breached." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). The residual four-year statute of limitations governs breach-of-contract claims. *Id.* (citing Tex. Civ. Prac. & Rem. Code § 16.051). The Angells filed their Third Amended Petition containing a breach-of-contract claim on July 5, 2019, so that filing is timely for any breach occurring after July 5, 2015. The Angells contend that Buyers breached the Contract and its right-of-first-refusal provision by letter dated December 30, 2018, in which Buyers asserted that they instead have an option to purchase the property under the Option Agreement. The Angells undisputedly filed their breach-of-contract claim within four years of that action. The trial court erred to the extent it granted Buyers summary judgment against the Angells' breach-of-contract complaint based on the statute of limitations.

Similarly, with regard to the declaratory-judgment action, the Angells argue that the cause of action accrued when Buyers asserted the Option Agreement as a reason for non-compliance with the Contract's right-of-first-refusal provision. Because they filed suit within a year of the assertion of the Option Agreement, Buyers contend that their claims are not barred by limitations.

19

A declaratory-judgment action accrues when the parties' dispute arises, and the applicable limitation period depends on the legal remedy underlying the cause of action. *In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App.—San Antonio 2011, no pet.); *Northwest Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 836 (Tex. App.—Austin 2008, pet. denied). Buyers assert that, because this is essentially a claim for rescission of the contract, the claim arose when the Option Agreement was signed on March 6, 2014, citing *Cosgrove v. Cade*, 468 S.W.3d 32, 36-37 (Tex. 2015). In *Cosgrove*, the supreme court held that plainly obvious and material omissions in an unambiguous deed charge parties with irrebuttable notice for limitations purposes. *Id.* at 34. Accordingly, the statute began to run when the deed was executed because the grantor had actual knowledge that the deed was incorrect. *Id.* at 36. Similarly, the court in *Mathis v. Stockdick* held that, in suits to correct mistakes in written agreements, limitations began running when the agreement was executed. 189 S.W.2d 106, 107-108 (Tex. Civ App.—Galveston 1945, writ ref'd). In *Stone v. Simms*, a declaratory-judgment action alleging that a contract was void because the plaintiff signed it under duress, the Texarkana court held that the statute of limitations began running at execution of the instrument. No. 06-00-00007-CV, 2001 WL 82349, at *2 (Tex. App.—Texarkana Feb. 1, 2001, no pet.) (mem. op.). In *Stone*, the defendant/movant claimed he had made all payments required under the contract and that both parties had tendered photographs that were destroyed as required by the contract. *Id.* at *1-2. That court relied on *Kenney v. Porter*, in which the court held that limitations in a case seeking correction of mutual mistake in contract terms began to run when the contract was executed. 604 S.W.2d 297, 306 (Tex. App.—Corpus Christi 1980, writ ref'd n.r.e.).

We conclude that the Angells raised an issue of fact regarding whether the declaratory-judgment request is barred by limitations and whether Buyers are entitled to judgment

20

as a matter of law. The authorities cited by Buyers do not control this claim. *Cosgrove* concerned reformation of a deed and contract to address omissions. *Cosgrove*, 468 S.W.3d at 34. But this case is not about a deed or plain and obvious omissions from the Option Agreement. Similarly, *Mathis* and *Kenney* concerned correction of mutual mistake in the terms of a contract. *Kenney*, 604 S.W.2d at 305-06; *Mathis*, 189 S.W.2d at 107-08. In the *Stone* case, the parties had already begun performance of the contract. 2001 WL 82349, at *1-*2.

By contrast, this case concerns various alleged non-plain and non-obvious flaws affecting the validity and enforceability of a contract that calls for performance—if ever—within twenty years after its formation. Claims regarding contracts that are performable over a period of time do not accrue until the work under the contract is complete, the contract is terminated under its terms, or the contract is anticipatorily repudiated and the repudiation is adopted by the other party. *City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 725 (Tex. App.—Corpus Christi 2004, pet. withdrawn). If valid and enforceable, the Option Agreement can be performed during a twenty-year period beginning March 6, 2014. Buyers undisputedly had not attempted to perform the option at the time of the ruling on the motion for summary judgment. Therefore, the limitations period for a claim that the contract is invalid and unenforceable has neither begun to run nor expired. Limitations does not bar the Angells' claims for a declaration regarding whether the Option Agreement is valid and enforceable.

We resolve issue three against the judgment.

## IV. Summary judgment against the Angells' fraud and negligent-misrepresentation claims was not erroneous.

By their fourth issue on appeal, the Angells contend that the Buyers were not entitled to summary judgment on the Angells' statutory-fraud and negligent-misrepresentation

21

claims because the Angells raised fact issues with respect to the elements that were challenged. Buyers moved for summary judgment claiming that the Angells produced no evidence that Buyers made any misrepresentations or false promises and that any misrepresentation or false promise was clearly contradicted by the Option Agreement.

To establish a statutory-fraud claim, a plaintiff must prove: (1) a transaction involving real estate; (2) during the transaction, the other party made a false representation of fact, made a false promise, or benefitted by not disclosing that a third party's representation was false; (3) the false representation or promise was made for the purpose of inducing the party to enter into a contract; (4) the party relied on the false representation or promise by entering into the contract; and (5) the reliance caused the party injury. *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 823 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing Tex. Bus. & Com. Code § 27.01).

The elements of a negligent-misrepresentation cause of action are: (1) defendant's representation to a plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest; (2) defendant's providing false information for the guidance of others; (3) defendant's failure to exercise reasonable care or competence in obtaining or communicating information; (4) plaintiff's justifiable reliance on defendant's representation; and (5) defendant's negligent misrepresentation proximately causing the plaintiff's injury. *Willis v. Marshall*, 401 S.W.3d 689, 698 (Tex. App.—El Paso 2013, no pet.); *see also Smith v. Sneed*, 938 S.W.2d 181, 185 (Tex. App.—Austin 1997, no writ).

The Angells produced no evidence of any representations made to them by Buyers concerning the nature of the Buyers' right to buy the 141.66-acre tract. In fact, they said they never talked to Buyers. The Angells produced some evidence that they discussed Buyers' rights

with Hilton that were described in the Contract. There is no evidence, however, that Buyers authorized Hilton to act as their agent in negotiations.

Even if the above constitutes some evidence of a false representation, the Angells' signing of the Option Agreement conclusively negates justifiable reliance on any prior representations about what the parties' agreement was. The supreme court held that, when a claim of fraudulent inducement is directly contradicted by a written contract's terms, as a matter of law there could be no justifiable reliance on a previous representation regarding the contract's terms. *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 559 (Tex. 2019). The Texas Supreme Court held that, while justifiable reliance is ordinarily a fact question, it can be negated as a matter of law under circumstances that reliance cannot be justified. *Id.* at 558. When a plaintiff asserts reliance on a misrepresentation that the written contract directly and unambiguously contradicts, the record contains both direct contradiction and other red flags that negate reliance. *Id.* at 559. Though the Texas Supreme Court discussed prior representations that were oral, the court did not limit its holding to a conflict between an oral agreement and a subsequent agreement. *See id.* at 558-59. The principle that a conflict between a representation and a subsequent written agreement alerts the recipient that reliance on the earlier representation is not justified applies with equal logical force to oral and written representations; if anything, the red flags are more apparent when both the representation and the subsequent agreement are written because they can more readily be compared and scrutinized. Justifiable reliance is an essential element of both causes of action for statutory fraud and negligent misrepresentation.

The record demonstrates as a matter of law that any reliance on prior representations inconsistent with the Option Agreement was not justified. Under the law applicable to fraud and misrepresentation claims, the trial court did not err by concluding as a

23

matter of law that the Angells' fraud and negligent-misrepresentation claims lacked merit. We resolve issue four in favor of the judgment.

## V.      Attorney's fees

The trial court awarded attorney's fees under the Declaratory Judgment Act; such awards must be for reasonable and necessary attorney's fees that it deemed equitable and just. *See* Tex. Civ. Prac. & Rem. Code § 37.009; *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Because we have reversed the judgment in part, the trial court may wish to review whether the award remains equitable and just. *See* Tex. Civ. Prac. & Rem. Code § 37.009; *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 77 (Tex. App.—Dallas 2001, pet. denied). We resolve issue five against the judgment.

### CONCLUSION

We affirm the summary judgment in part and reverse it in part. We affirm the judgment that the Angells take nothing by their claims for fraud and negligent misrepresentation and that the Angells' defense of unilateral mistake fails as a matter of law. We reverse the judgment in all other respects and remand the cause for further proceedings.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed in Part, Reversed in Part, and Remanded

Filed:   October 29, 2021

24